SOUTHERN SYSTEMS,
INC., Plaintiff,

v.

TORRID OVEN LIMITED, Defendant.

No. 99–2089–DV.

United States District Court,
W.D. Tennessee,
Western Division.

Aug. 2, 1999.

Michael I. Less, Ted M. Hayden, Less Getz & Lipman, Memphis, TN, Michele Fosco Salazar, Less Getz & Lipman, Memphis, TN, for Southern Systems, Inc., plaintiff.

Stephen P. Hale, Jennifer Ziegenhorn, Hale Headrick & Dewey, Memphis, TN, for Torrid Oven Limited, defendant.

Dianne Vescovo, for Dianne Vescovo.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

DONALD, District Judge.

Before this court is Defendant's, Torrid Oven Limited, Rule 12(b)(2) motion to dismiss Plaintiff's, Southern Systems, Inc., breach of contract action for lack of personal jurisdiction. Alternatively, Defendant requests the court to dismiss Plaintiff's complaint under the doctrine of forum non conveniens. In its complaint, Plaintiff alleges that Defendant breached a contract for the design, fabrication and installation of a conveyor system and seeks compensatory damages, a sum for delay costs, interest on all past due amounts, and a declaratory judgment from this court adjudging that Plaintiff is not responsible for system operational problems allegedly caused by third party modifications to the conveyor system. Plaintiff opposes Defendant's motion to dismiss on the grounds that Defendant has had sufficient contacts with the state of Tennessee to grant this court personal jurisdiction over it and that the doctrine of forum non conveniens is not applicable to the facts of this case. This court has subject matter jurisdiction over this case under the authority of 28 U.S.C. § 1332.

For the following reasons, the court denies Defendant's motion to dismiss.

## I. FACTS

Defendant, a Canadian corporation with its principal place of business in Ontario, Canada, entered into a contract with Formet Industries ("Formet") to build and install a "turn-key" industrial oven at Formet's facility in St. Thomas, Ontario in Canada. Pursuant to this contract, in March 1996, Defendant began negotiating with Plaintiff to have a conveyor system installed at the Formet facility. The conveyor system was intended to move the Formet chassis through the industrial oven. Plaintiff, an American corporation with its principal place of business in Memphis, Tennessee, submitted a proposal to Defendant during the latter part of March, 1996. On June 7, 1996, Defendant sent Plaintiff a letter of intent authorizing Plaintiff to begin designing, engineering and fabricating the conveyor system for the Formet project.

During the early months of 1997, Plaintiff began designing and fabricating the conveyor system. In late April, 1997, Plaintiff began installation of the conveyor system at Formet's facility. Plaintiff began operating the conveyor system in November/December 1997 to allow Defendant to experiment with the system operation. In January 1998, Plaintiff began running frames for production and continued to test and adjust the conveyor system. On June 2, 1998, Defendant sent Plaintiff a letter indicating that it was hiring another company to implement changes to the conveyor system. After Defendant began to experience operational problems with the conveyor system, it prevented Plaintiff from having access to the conveyor system. Defendant alleged that the operational problems resulted from Plaintiff's negligence and refused to pay Plaintiff the contracted amount for its services in designing, engineering and fabricating, and installing the conveyor system.

Defendant claims that Plaintiff is not entitled to payment under the contract because it failed to properly design and install the conveyor system. On the other

hand, Plaintiff claims that all system malfunctions resulted from the actions of the third party company that Defendant hired to implement changes to the conveyor system.

## II. STANDARD

■ In the face of a challenge to personal jurisdiction over a defendant, the plaintiff has the burden to establish that such jurisdiction exists. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir.1988). The weight of this burden depends in large part upon how the court chooses to proceed in making its determination concerning personal jurisdiction. If a district court decides to make a personal jurisdiction determination based solely upon the written material submitted by the parties, the plaintiff is "required only to make a prima facie case of jurisdiction, that is, he need only demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss." *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir.1980) (internal citations and quotation marks omitted). Where the district court does not hold an evidentiary hearing on the question of personal jurisdiction, "the burden of the plaintiff is relatively slight." *American Greetings Corp.* at 1169. The court should view all facts averred in the pleadings and affidavits in a light most favorable to the plaintiff and not consider any conflicting facts offered by the defendant. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 626 (6th Cir.1998).

■ If, on the other hand, the district court determines that the parties' written submissions have raised issues of credibility or factual disputes requiring resolution, it may conduct a preliminary evidentiary hearing. *Welsh* at 439. Once this evidentiary hearing is held, the plaintiff must show "by a preponderance of the evidence that jurisdiction exists." *Id.*

Although the parties do not raise or dispute the appropriate standard of review for a Rule 12(b)(2) motion, the court notes that there is some uncertainty in the case law as to the appropriate standard to use where some discovery has taken place, but no evidentiary hearing has been held. In *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790 (6th Cir.1996), the United States Court of Appeals for the Sixth Circuit stated that "[a]rguably, this Circuit has not expressly determined the appropriate burden of proof for cases in which the district court permits at least some discovery but does not conduct an evidentiary hearing before ruling on a 12(b)(2) motion to dismiss." *Nationwide Mut. Ins. Co.* at 792. Although the Sixth Circuit found it unnecessary to decide that question in *Nationwide Mut. Ins. Co.* because the plaintiff was unable to satisfy the lesser burden of proof, it did provide the lower courts with some guidance when it stated "[w]ere it necessary to decide this question, we would be inclined to agree that the plaintiff need only establish a prima facie case that personal jurisdiction exists over the defendant in a case such as this." *Id.* at 793.

In the case at hand, the parties have engaged in some discovery, but the court has not held an evidentiary hearing concerning the existence of personal jurisdiction over Defendant. Based upon the Sixth Circuit's comments in *Nationwide Mut. Ins. Co.*, the court concludes that Plaintiff is only required to satisfy the lesser burden of establishing a prima facie case of personal jurisdiction, i.e., demonstrating facts which support a finding of jurisdiction. *See Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir.1989).

## III. DISCUSSION

### A. Personal Jurisdiction

■ In cases before a federal court on diversity jurisdiction, an inquiry into personal jurisdiction is both a statutory and a constitutional question. *International Technologies Consultants, Inc. v. Euroglas, S.A.*, 107 F.3d 386, 391 (6th Cir.1997). The statutory question arises because a federal court must apply the law

of the state in which it sits when determining whether personal jurisdiction over a defendant exists. *Reynolds v. International Amateur Athletic Fed'n,* 23 F.3d 1110, 1115 (6th Cir.1994). In other words, a federal court presiding over a case before it on diversity jurisdiction "may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law." *International Technologies Consultants, Inc.* at 391. The constitutional question arises from the fact that this statutory grant of jurisdiction must comport with the requirements of the Fourteenth Amendment's Due Process Clause. *See CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996).

■ For the state of Tennessee, the statutory and constitutional inquiries into personal jurisdiction are essentially the same question. This result obtains because Tennessee's long-arm statutes grant its courts of record the power to exercise personal jurisdiction over a defendant on "[a]ny basis not inconsistent with the constitution of this state or the United States." Tenn.Code Ann. § 20–2–214. Thus, Tennessee courts and federal courts sitting in Tennessee may exercise personal jurisdiction over a defendant to the fullest extent allowed by the Constitution. *See Third Nat'l Bank* at 1089.

■ The seminal case concerning the constitutional requirements for personal jurisdiction is *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In *International Shoe Co.,* the Supreme Court ruled that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co.* at 316, 66 S.Ct. 154. In determining whether these constitutional requirements of personal jurisdiction over a defendant have been met, courts have recognized two types of personal jurisdiction, "general jurisdiction" and "specific jurisdiction." *See Third Nat'l Bank* at 1089. For a court to have general jurisdiction, a defendant's contacts with the state must be continuous and systematic. *Id.* This type of contact with the forum state allows the court to exercise jurisdiction over the defendant even if the case is unrelated to defendant's contacts with the state. *Id.* A court exercises specific jurisdiction over a defendant where the suit arises out of or is related to the defendant's contacts with the forum state. *Id.*

Contrary to Defendant's assertion, the fact that Plaintiff in the instant case seeks relief for an alleged breach of contract does not inexorably lead to the conclusion that specific jurisdiction is the only applicable standard here. As Plaintiff noted in its response to Defendant's motion to dismiss, the Sixth Circuit has analyzed breach of contract cases under both general jurisdiction and specific jurisdiction. *See Nationwide Mut. Insur. Co.* at 791, 793–94; *Third Nat'l Bank* at 1088–90. Although the Sixth Circuit wasted little time in finding that the plaintiffs in these cases had not established general jurisdiction, these findings do not necessarily dictate the outcome of this case. Personal jurisdiction determinations must be made based on the specific facts of each case. *See American Greetings* at 1169. Accordingly, this court will evaluate whether Plaintiff has demonstrated facts which support a finding of general or specific jurisdiction.

1. General Jurisdiction

■ As noted above, Plaintiff cannot prove general jurisdiction unless it can show that Defendant's contacts with Tennessee are so continuous and systematic that Plaintiff is entitled to bring causes of action unrelated to Defendant's contacts with Tennessee. Plaintiff contends that it has satisfied this burden by showing that 1) Defendant performed work for two Tennessee owners and 2) Defendant subcontracted with two Tennessee companies,

Plaintiff and Cotton & Edwards, on multiple projects. In support of its first basis for a finding of general jurisdiction, Plaintiff cites the deposition testimony of Jeff Muyshondt ("Muyshondt"), Defendant's President, and Helmut Meier ("Meier"), an employee of Defendant, as demonstrating that Defendant provided installation services for a project in Athens, Tennessee in the late 1970s and for a plant in Ripley, Tennessee in 1993 and 1995. As additional support, Plaintiff refers to Muyshondt's and Meier's deposition testimony as indicating that Defendant contracted with Cotton & Edwards to supply conveyor systems on at least four occasions, beginning in 1997. Plaintiff also suggests that additional transactions might be discovered if Defendant were to divulge documents relating to its transactions with Cotton & Edwards and allow Plaintiff to fully explore the depth of the relationship between the two companies.

The court does not find that these business transactions are of such quality or number to be characterized as continuous and systematic in nature to support a finding of general jurisdiction. In making this determination, the court notes that proving general jurisdiction over a nonresident defendant is difficult, as evidenced by the greater number of cases rejecting such jurisdiction than finding it. *See Chase Cavett Services, Inc. v. Brandon Apparel Group, Inc.,* No. 02A01–9803–CH–00055, 1998 WL 846708, at * 7, n. 4 (Tenn.Ct.App. 1998) (observing that "[t]he Supreme Court cases following International Shoe have applied the minimum contacts test in a more conservative manner when the issue was one of general jurisdiction"); WILLIAM W. SCHWARZER ET AL., FEDERAL CIVIL PROCEDURE BEFORE TRIAL, 3:28 (The Rutter Group 1998). The facts averred by Plaintiff do not overcome this difficulty. The length of time between the project performed in the late 1970s and the two projects performed in the 1990s is too great to conclude that Defendant has maintained such a continuous relationship with Tennessee that *it should be liable to suit on claims unrelat-*

*ed to its contacts with Tennessee.* Moreover, four business transactions with a Tennessee company in two years does not, without more, show the continuous and systematic contact needed to make Defendant liable for acts unrelated to its contacts with Tennessee. Accordingly, the court finds that Plaintiff has failed to produce facts sufficient to show a prima facie case of general jurisdiction over Defendant.

### 2. Specific Jurisdiction

█ To prove specific jurisdiction, Plaintiff must be able to demonstrate that its suit arises out of or is related to Defendant's contacts with Tennessee. *See Conti v. Pneumatic Products Corp.,* 977 F.2d 978, 981 (6th Cir.1992). In *Southern Machine Co., Inc. v. Mohasco Indus., Inc.,* 401 F.2d 374 (6th Cir.1968), the Sixth Circuit carefully reviewed the Supreme Court decisions of *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) and *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) and derived from those opinions a three-part test for courts to use when analyzing specific jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co.* at 381. The Sixth Circuit has held that failure to satisfy any one of these three criteria means that personal jurisdiction cannot be invoked. *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1303 (6th Cir.1989). Although this test should not be mechanically applied, *Welsh* at 440, it does provide a concise framework to assist the court in assessing whether Plaintiff has

shown specific jurisdiction over Defendant. Accordingly, the court will adopt the *Southern Machine Co.* test to analyze the facts averred by Plaintiff in support of specific jurisdiction.

### a. Purposeful Availment

The Sixth Circuit has referred to the purposeful availment prong of its three-part test as the sine qua non for in personam jurisdiction. *Southern Machine Co.* at 381–82. The requirement of purposeful availment prevents defendants from being haled into a jurisdiction as a result of random, fortuitous contacts or the unilateral actions of a plaintiff or third party. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A purposeful availment will not be found unless the contacts with the forum state resulted from the defendant's own actions. *Id.* If the defendant deliberately engages in significant activities within a State or creates continuing obligations between himself and the residents of that State, he will be deemed to have "availed himself of the privilege of conducting business there." *Id.* at 475–76, 105 S.Ct. 2174.

In the case at hand, the court finds that Plaintiff has shown sufficient facts to establish that Defendant purposefully availed itself of the privilege of transacting business in Tennessee. First, Plaintiff has provided evidence that the Formet project was not an isolated business transaction between Plaintiff and Defendant, but part of an ongoing business relationship. The following facts pled and supported by affidavits or deposition testimony bear witness to this relationship:

1) Beginning in 1994, Defendant contracted with Plaintiff to provide conveyor systems on Dana Corporation projects in Elizabethton, Kentucky and Ontario, Canada.[1]

2) During the negotiations between Plaintiff and Defendant for the Dana Corporation project in Elizabethton Kentucky, Craig Corcoran, Defendant's Vice–President, flew to Memphis to meet with Sawyer at Plaintiff's offices.

3) During the Elizabethton project, Meier called Plaintiff's employees on more than one occasion to provide instructions to them concerning the technical aspects of the work Plaintiff had contracted to do for Defendant.

4) John Adamse, an employee of Defendant, and Meier traveled to Memphis and met with Plaintiff's employees concerning the Dana Corporation projects in Kentucky and Canada.

5) From 1994 through 1998, Defendant contacted Plaintiff requesting quotations on a Delco Products project in Albany, Georgia; a Dana Corporation project in Mexico; a Rehau project in Culman, Alabama; a Magna 175 project; and a project for J.L.G. McConnellsburg.

6) In May of 1996, Muyshondt traveled to Memphis and met with Tom Sawyer ("Sawyer"), a sales engineer for Plaintiff, about all the projects Plaintiff had quoted for Defendant.

7) In his deposition, Muyshondt described the relationship that existed between Plaintiff and Defendant as a "continuous relationship."

These facts indicate that Defendant began to transact business with Plaintiff in 1994 and maintained a consistent and ongoing business relationship from that time through 1998. During this business relationship, Defendant's employees, including high level executives, met with Plaintiff in Memphis several times to engage in contract negotiations or to review ongoing projects.

Plaintiff has also provided evidence showing that Defendant deliberately created contacts with Tennessee and caused an effect in the State during the Formet project:

---

1. Because the court finds that Torrid, Inc., a subsidiary of Defendant, operated as an alter ego of Defendant, it makes no distinction between the two companies for purposes of assessing Defendant's contacts with Tennessee.

1) The first contact between Plaintiff and Defendant on the Formet project was initiated by Defendant when Muyshondt requested a quote on the project from Sawyer.

2) Although Sawyer resided in Hot Springs, Arkansas, Muyshondt knew that Sawyer was one of Plaintiff's employees and that any prices Sawyer gave Muyshondt would have to be approved by Plaintiff in Memphis.

3) During the Formet project, Defendant's employees sent correspondence to Sawyer via Plaintiff's address in Memphis.

4) Throughout the Formet project, Defendant requested several job alterations and directed Plaintiff to make extensive changes.

5) During the Formet project, Plaintiff's employees spent 7,988 hours providing engineering services at its Memphis offices and 21,720 hours manufacturing the conveyor system at its Memphis plant.

6) Plaintiff used sixty-five Tennessee vendors to purchase the components for the conveyor system it contracted to manufacture for the Formet project and paid almost $830,000 for these components.

In *Southern Machine Co.*, the Sixth Circuit stated that "business is transacted in a state when obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of that state; and the defendant has purposefully availed himself of the opportunity of acting there." *Southern Machine Co.* at 382. Plaintiff has provided some evidence indicating that Defendant initiated an ongoing business relationship with Plaintiff and initially contacted Plaintiff concerning the Formet project. Moreover, the court has no doubt that nearly 30,000 hours of Tennessee labor and almost $830,000 in business transactions with Tennessee vendors constitute a "realistic impact on the commerce of" Tennessee. The continuous business relations between Plaintiff and Defendant from 1994 through 1998 demonstrate that

Defendant has deliberately availed itself of the privilege of doing business in Tennessee. Accordingly, the court finds that Defendant has transacted business in Tennessee.

The court recognizes that many of these facts, standing alone, would not support a finding of purposeful availment. However, when reviewing the existence of specific jurisdiction, the court must examine "prior negotiations, and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp.* at 479, 105 S.Ct. 2174, This language suggests that the existence of specific jurisdiction should be determined, not by examining each fact in isolation, but by weighing the totality of the circumstances. The totality of the circumstances created by the facts listed above show that Plaintiff has made a prima facie showing of purposeful availment. *See, e.g., First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir.1982) (finding the first and second prongs of the *Southern Machine Co.* test are met when "a dispute arises from a substantial business contract with a corporation based in another jurisdiction").

### b. Arising From Activities in Forum State

This prong of the *Southern Machine Co.* test is easily satisfied here. In its complaint, Plaintiff alleges that Defendant breached a contract whereby it agreed to pay Plaintiff $2,059,007.42 to design, engineer, fabricate, test, supply and install conveyor systems at Formet Industries in St. Thomas, Ontario. Plaintiff's cause of action certainly arises from Defendant's activities in Tennessee, namely the negotiation and performance of the Formet contract.

### c. Reasonableness of Exercising Jurisdiction

The third prong of the *Southern Machine Co.* test is essentially an inquiry into whether "Tennessee has an interest in resolving the conflict at issue." *Southern Machine Co.* at 384. In *First Nat'l Bank*

*of Louisville,* the Sixth Circuit advised district courts to evaluate the third factor by examining "the extent of the forum state's interest and whether exertion of jurisdiction over the particular defendant is fair." *First Nat'l Bank of Louisville* at 1126. Where, as here, the plaintiff has satisfied the first two factors, an inference arises that the third factor will be satisfied as well. *Id.* As the Sixth Circuit said in *Southern Machine Co.,* "resolution of the third [factor] involves merely ferreting out the unusual cases where that interest cannot be found." *Southern Machine Co.* at 384; *see also Aristech Chem. Int'l Ltd.* at 628.

There is no question that the State of Tennessee has an interest in having this dispute resolved within its borders. Under Tenn.Code Ann. § 20–2–201, entitled "Foreign corporations subject to action", a foreign corporation "found doing business in this state" is subject to suit in Tennessee to the same extent that Tennessee corporations are liable to suit. *See* Tenn. Code Ann. § 20–2–201(a). Section 20–2–201 further defines "doing business" as occurring when a corporation has any transaction with a person situated in this state. *See* Tenn.Code Ann. § 20–2–201(b). Taken together, these provisions express a legislative interest in making foreign corporations amenable to suit when they engage in business transactions with Tennessee residents. This state interest in business disputes between Tennessee residents and foreign corporations is reiterated in Tenn.Code Ann. § 20–2–214, which grants Tennessee state courts jurisdiction over nonresidents of Tennessee for any action or claim arising from the transaction of business within Tennessee. *See*

Tenn.Code Ann. § 20–2–214(a)(1). Tennessee's interest in business disputes between its residents and foreign corporations can exist even where the dispute arises from a single contract.[2] *Southern Machine Co.* at 385. As the Sixth Circuit stated in *Southern Machine Co.,* "when the contract is with a resident of Tennessee, the State's interest in resolving a suit based on the contract and brought by that resident cannot be doubted." *Id.* The existence of the state's interest is especially strong here where the suit on the contract is brought by a Tennessee resident for over $2 million in damages and involves over 30,000 hours of labor exerted by that resident in Tennessee.

However, the court is aware that Defendant's foreign nationality raises special considerations for a fairness inquiry. In *Asahi Metal Ind. Co. v. Superior Court of California* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the Court noted that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Ind. Co.* at 114, 107 S.Ct. 1026. Because the defendant in *Asahi Metal Ind. Co.* had its headquarters in Japan, but was being asked to litigate in California, the Court found the distance the defendant would have to travel to be an undue burden and ultimately held that this burden outweighed California's and the plaintiff's interest in trying the lawsuit in California.

Notwithstanding the special considerations raised by exercising personal jurisdiction over foreign defendants, the court

**2.** This statement should not be construed as being in conflict with the Supreme Court's statement in *Burger King Corp* that one contract *alone* cannot automatically establish sufficient minimum contacts to invoke personal jurisdiction. *Burger King Corp.* at 478, 105 S.Ct. 2174. The Court made that statement in the context of warning courts against relying solely on mechanical tests to determine personal jurisdiction. *Id.* at 478–79, 105 S.Ct. 2174. The Court explained that courts

must evaluate all of the circumstances surrounding the formation and performance of that contract before making an assessment of whether personal jurisdiction exists. *Id.* at 479, 105 S.Ct. 2174. That is exactly what this court has done in the instant opinion. Here, the court only reiterates the Sixth Circuit's observation that a forum state can have an interest in a single contract between one of its residents and an out-of-state or foreign corporation.

finds that exercising jurisdiction over Defendant satisfies the third prong of the *Southern Machine Co.* test. The court reaches this result based on the Sixth Circuit's reasoning in *Aristech Chem. Int'l Ltd.* In *Aristech Chem. Int'l Ltd.,* the Sixth Circuit reversed a district court's dismissal of a suit against a Canadian company for lack of personal jurisdiction. The *Aristech Chem. Int'l Ltd.* case turned upon the third prong of the *Southern Machine Co.* test because both the district court and the Sixth Circuit agreed that the first two prongs had been satisfied. Although the Sixth Circuit recognized the special considerations raised by a foreign defendant, it distinguished the case before it from the facts of *Asahi Metal Ind. Co. See Aristech Chem. Int'l Ltd.* at 628–29. The court relied upon two observations to conclude that the burden of litigating in an American court would be substantially lighter for a Canadian defendant than for a Japanese defendant or most other foreign defendants. *Id.* First, the court noted that unlike a Japanese company that would have to travel from the other side of the world, a Canadian defendant would only have to take a short plane flight to litigate in a Kentucky courtroom. *Id.* Second, the court observed that the unfairness of litigating in a foreign legal system is alleviated where a Canadian defendant is involved because the legal system of the United States is "rooted in the same common law traditions as that of Canada." *Id.* at 629 (internal citations and quotation marks omitted). These observations are equally true in the case before the court. A plane flight from Ontario, Canada to Memphis, Tennessee would be no more burdensome to Defendant than the flight from Ontario to Kentucky would have been for the defendant in *Aristech Chem. Int'l Ltd.* Moreover, the court concurs with the Sixth Circuit observation concerning the similarity of the Canadian legal system and that of the United States. In short, the burden that would be imposed upon Defendant by litigating in Memphis is minimal and outweighed by Tennessee's interest in having a business dispute with one of its residents resolved within its borders.

Based on the foregoing considerations, the court concludes that Plaintiff has shown a prima facie case of personal jurisdiction sufficient to defeat Defendant's motion to dismiss.

### B. Forum Non Conveniens

The doctrine of forum non conveniens has been defined as the "discretionary power of the court to decline jurisdiction when convenience of parties and ends of justice would be better served if action were brought and tried in another forum." BLACKS'S LAW DICTIONARY 655 (6th ed.1990). The doctrine allows a court to refuse to exercise jurisdiction even when "jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The factors that are to guide a district court in determining whether to decline to exercise jurisdiction under the doctrine of forum non conveniens were set forth in *Gulf Oil Corp.* First, a court should consider the private interests of the litigants. *Gulf Oil Corp.* at 508, 67 S.Ct. 839. Such considerations include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* Another relevant factor is the enforceability of a judgment if one is obtained. *Id.* All these considerations are designed to prevent plaintiffs from vexing, harassing or oppressing defendants by inflicting unnecessary expenses or trouble. *Id.*

Although the forum non conveniens doctrine sometimes protects defendants from unduly burdensome litigation, "the plaintiff's choice of forum should rarely be disturbed." *Id.* As the Supreme

Court said in *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947):

> [h]e [the plaintiff] should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.

*Koster* at 524, 67 S.Ct. 828. Thus, where a plaintiff chooses a home forum, its choice of forum is entitled to great deference. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *see also Dowling v. Richardson–Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984).

▇▇▇ A court deciding whether to grant a motion to dismiss based upon the doctrine of forum non conveniens should also consider factors of public interest. *Gulf Oil Corp.* at 508, 67 S.Ct. 839. Under the rubric of public interest, the Supreme Court has stated that "there is a local interest in having localized controversies decided at home." *Id.* at 509, 67 S.Ct. 839. This is true because jury duty should not be imposed upon individuals who have no relation to or interest in the litigation. *Id.* Moreover, public interest concerns also suggest that it is preferable in a diversity case to try the suit in a forum that is familiar with the state law that must govern the case. *Id.*

▇▇▇ Based upon this case law, the court starts with a presumption of deference to Plaintiff's choice to try this case in a district court in Memphis, Tennessee. This choice appears to be driven by convenience to Plaintiff since its headquarters is located in Memphis and a significant portion of its work on the Formet project was performed in Memphis. Although Defendant argues that the private and public interests weigh heavily in favor of having this case tried in Ontario, Canada because most of the witnesses will be Canadian residents, the court finds that these considerations do not outweigh the deference that should be afforded Plaintiff's choice of forum. Since Plaintiff is headquartered in Memphis and a significant portion of its work on the Formet project was performed in Memphis, this case will certainly require witness testimony from residents of Memphis. As to Defendant's argument concerning the number of witnesses, the court declines to deprive Plaintiff of its choice of forum based simply on a mathematical computation. Moreover, the court is disinclined to grant Defendant's motion to dismiss based upon premature speculation as to the number of witnesses each party will present at trial. Defendant's most persuasive argument, that a case which is to be governed by Canadian law should be decided in a Canadian forum, is refuted by evidence offered by Plaintiff. In his affidavit, Leon Linton, the president of Southern Systems, Inc., stated that Plaintiff did not agree that its contract with Defendant would be governed by Canadian law. (Leon Linton Aff. ¶ 6). As stated earlier, the court cannot consider any conflicting facts offered by a defendant in a challenge to personal jurisdiction where no evidentiary hearing has been held. Accordingly, the court must accept Plaintiff's factual averment that it did not agree that Canadian law would govern interpretation of its contract with Defendant on the Formet project.

The court concludes that Defendant has failed to make an adequate showing to overcome the presumption in favor of Plaintiff's choice of its home forum.

## IV. ORDER

Based on the foregoing, Defendant's motion to dismiss for lack of personal jurisdiction and, alternatively, under the doctrine of forum non conveniens is **DENIED**.