ARISTECH CHEMICAL INTERNATIONAL LIMITED, Plaintiff–Appellant,

v.

ACRYLIC FABRICATORS LIMITED, Defendant–Appellee.

No. 96–6525.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 2, 1997.

Decided March 12, 1998.

---

Robert B. Craig (argued), Robert A. Winter, Jr. (briefed), Taft, Stettinius & Hollister, Crestview Hills, KY, for Plaintiff–Appellant.

John T. McGarvey (argued and briefed), Tom A. Howley (briefed), Morgan & Pottinger, Louisville, KY, for Defendant–Appellee.

Before: NORRIS, SUHRHEINRICH, and CUDAHY,* Circuit Judges.

## OPINION

CUDAHY, Circuit Judge.

This appeal requires us to decide whether the exercise of personal jurisdiction over a Canadian defendant is reasonable. The district court concluded that it was not, and therefore granted the defendant's Rule 12(b)(2) motion to dismiss. But we find that the district court did not properly balance the burden on the Canadian defendant against the interests of the plaintiff and the forum state. Because we believe that the exercise of personal jurisdiction is reasonable, we reverse.

## I. Background

Before focusing on the facts relevant to this appeal, we briefly review two of the strictures that govern a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. In the court below, the district judge relied on the parties' affidavits and did not hold an evidentiary hearing. In these circumstances, we view the facts in the light most favorable to the plaintiff, see *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir.1991), and do not consider facts proffered by the defendant that conflict with those offered by the plaintiff. *See id.* We recite the facts giving rise to this appeal in accordance with these principles.[1]

Aristech Chemical International Limited is a Delaware corporation and a subsidiary of Mitsubishi Corporation. While Aristech's principal place of business is in Pittsburgh, Pennsylvania, it manufactures acrylic products in Florence, Kentucky. Acrylic Fabricators Limited (AFL) is a citizen of Ontario, Canada, and has its primary place of business there.

In December 1994, an AFL representative telephoned Larry Heinzelman, a product manager at Aristech, to inquire about the availability and price of a standard acrylic with a silver-metallic tint. In February 1995, an AFL representative telephoned Heinzelman to ascertain whether Aristech was capable of specially manufacturing between one and three million pounds of an acrylic with a custom green tint. This was not the first time AFL had demonstrated an interest in Aristech's products; AFL had made at least fourteen purchases directly from Aristech in the 1980s, and in more recent years had purchased Aristech's products from a Canadian distributor.

In May of 1995, Aristech learned (perhaps from one of AFL's competitors, although that is not exactly clear) that the inquiries related to a project in Toronto, Canada, that was spearheaded by the John Ryan Company of Minneapolis, Minnesota. John Ryan had been hired by the Toronto Dominion Bank to handle the fabrication and installation of literature racks in approximately one thousand of its branch offices. John Ryan was responsible for specifying the acrylic that would be used in the project and selecting the fabricator that would manufacture and install the racks. In late May, Heinzelman traveled to Minneapolis to discuss whether Aristech could supply acrylic for the project. A representative of John Ryan was concerned that Aristech could not manufacture an acrylic with the appropriate tint. He also emphasized the magnitude of the Toronto Dominion

* The Honorable Richard D. Cudahy, Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. The defendant filed a motion to strike portions of the plaintiff's brief that referred to two affidavits which allegedly were not before the district court when it dismissed the action. The outcome of this appeal will not be affected by whether we consider the facts recounted in the affidavits. Accordingly, we do not reach the merits of the defendant's motion or consider the facts recounted in the challenged affidavits.

Bank project, which would require approximately 67,000 pounds of acrylic in 1995 and three times that in 1996, 1997 and 1998.

After the meeting, Heinzelman sent samples of a green-tinted acrylic to John Ryan. The company approved the color and requested that Aristech produce additional samples. John Ryan directed Aristech to send samples to two fabricators that John Ryan was considering for the project. One of these fabricators was AFL.

On June 30, 1995, Heinzelman received a call from one of AFL's planning managers. The manager explained that AFL had not yet been awarded the Toronto Dominion Bank project but strongly anticipated that it would be. He also reiterated that the project required a sizeable amount of acrylic. In August 1995, John Ryan finally selected AFL as its fabricator. Later that month, at AFL's request, Heinzelman flew to Ontario to discuss the price of the green-tinted acrylic.

After the meeting, and in light of the large volume of orders that Aristech anticipated, it requested that AFL supply credit references. AFL faxed a list to Heinzelman in Kentucky. On August 31, 1995, AFL informed Aristech that it had compared Aristech's prices to those of a competitor, and had decided to do business with Aristech. AFL predicted that it would order 192,000 pounds of acrylic, with an approximate value of $450,000 in American currency, over the next six months.

On September 21, 1995, AFL placed an order for 40,000 pounds of the green-tinted acrylic, with a value of approximately $95,000 in American currency. Upon receiving the order, Heinzelman mailed AFL an "Order Acknowledgment Form" listing the conditions of sale. One was that Kentucky law governed the transaction.

Aristech usually fills an order within four to six weeks of the date the order is placed. However, because it was under pressure from AFL, Aristech made substantial changes to its production schedule and completed AFL's order in approximately ten days. The manufacturing took place at Aristech's plant in Florence, Kentucky, and the product was shipped from Kentucky as well.

Between December 1994 and the date that the product was shipped, Heinzelman and representatives of AFL exchanged at least fifty phone calls.

The order that AFL placed in September 1995 proved to be the final transaction between the companies. When AFL failed to pay for the acrylic, Aristech filed suit in Kentucky state court. AFL responded by removing the action to federal district court and filing a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Aristech appealed after the district judge granted AFL's motion.

## II. Personal Jurisdiction

█ When a federal court sits in diversity, it may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so. *See Kerry Steel v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir.1997). Often this rule requires the court to determine whether both the state's long-arm statute and the Due Process Clause of the United States Constitution permit the exercise of jurisdiction. But when a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge and the court "need only determine whether the assertion of personal jurisdiction ... violates constitutional due process." *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir.1996). Because Kentucky has construed its long-arm statute to extend as far as the Due Process Clause, *see Wright v. Sullivan Payne Co.*, 839 S.W.2d 250, 253 (Ky.1992), we may confine ourselves to this single inquiry.

█ The Due Process Clause permits the exercise of both general and specific jurisdiction. General jurisdiction exists when a defendant has "continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims." *Kerry Steel*, 106 F.3d at 149. Specific jurisdiction, in contrast, subjects the defendant "to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Id.* (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 & n. 8, 104 S.Ct. 1868, 1872 & n. 8, 80

L.Ed.2d 404 (1984)). Aristech does not argue that AFL's contacts with Kentucky are pervasive enough to justify general jurisdiction; instead Aristech asserts that its relationship with AFL, and the contacts arising out of that relationship, are sufficient for specific jurisdiction. Thus, to defeat AFL's Rule 12(b)(2) motion, Aristech must make a prima facie showing that the exercise of personal jurisdiction is proper. *See id.*

■ Whether specific jurisdiction exists depends on three criteria. First, AFL must have purposefully availed itself of the privilege of acting in Kentucky or purposefully caused a consequence there. Second, the cause of action must arise from AFL's actions in Kentucky. Finally, the exercise of jurisdiction must be reasonable. *See Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968). The district court found that the first two criteria were satisfied, but that the exercise of jurisdiction was unreasonable because AFL is a foreign defendant. We review these conclusions de novo. *See Nationwide,* 91 F.3d at 793.

■ We may quickly dispose of the first two criteria. Although AFL argued in its brief that Aristech had failed to meet its burden with respect to all of the criteria, at oral argument AFL conceded that there was a prima facie showing that the company had availed itself of Kentucky and that the cause of action arose there. While these are close questions, we believe that the district court's findings with respect to these matters are adequately supported. The acrylic was a specially-manufactured product, AFL placed a substantial order, and both parties envisioned a relationship between the companies that would span several years. In light of these facts, and AFL's concession, we focus our inquiry primarily on whether the exercise of jurisdiction is reasonable.

■ Whether the exercise of jurisdiction is reasonable ultimately depends on whether Kentucky has an interest in resolving the dispute between Aristech and AFL. *See Mohasco,* 401 F.2d at 384. This circuit has already observed that where the first two criteria are satisfied, "only the unusual case will not meet this third criterion." *Theunissen,* 935 F.2d at 1461 (citing *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1170 (6th Cir.1988)); *see Mohasco,* 401 F.2d at 384. The district court reasoned that AFL's status as a Canadian corporation rendered this an unusual case.

Although we disagree with the district judge's ultimate conclusion, he was correct to afford special attention to AFL's Canadian status. The Supreme Court has cautioned that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Industry Co. v. Superior Court of Solano County, Cal.,* 480 U.S. 102, 115, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987) (citation omitted). In *Asahi,* the Supreme Court determined whether the exercise of jurisdiction over a foreign defendant was reasonable by balancing "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Id.* at 113, 107 S.Ct. at 1033; *see also Theunissen,* 935 F.2d at 1461. Therefore we begin our analysis by assessing the burdens AFL would face if we found it subject to the jurisdiction of a federal district court located in Kentucky.

The Supreme Court has warned that the burden of mounting a defense in a foreign legal system is "unique" and should be afforded "significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi,* 480 U.S. at 114, 107 S.Ct. at 1033. But we think that a Canadian defendant such as AFL bears a substantially lighter burden than does a Japanese defendant—or for that matter, most other foreign defendants. *See Theunissen,* 935 F.2d at 1462 (finding that a federal court in the Eastern District of Michigan had jurisdiction over a defendant from Windsor, Ontario). First, only a short plane flight separates Ontario from Kentucky. This is not a case where the exercise of jurisdiction requires a company to travel from the other side of the world, *see Asahi,* 480 U.S. at 114, 107 S.Ct. at 1033, or even across the Atlantic, *see Nationwide,* 91 F.3d at 797. Simply stated, the distance between Ontario and Kentucky is not overly burden-

some. *See Theunissen,* 935 F.2d at 1462; *Ensign–Bickford Co. v. ICI Explosives USA Inc.,* 817 F.Supp. 1018, 1031 (D.Conn.1993) (Cabranes, C.J.) (emphasizing the "relatively short distance from the defendant's principal place of business in Ontario, Canada, to the site of this litigation in Connecticut"); *Glinka v. Abraham & Rose Co.,* 199 B.R. 484, 497 (D.Vt.1996) ("The burden in this case on the defendant ... is slight; its offices in Montreal are not particularly distant [from Vermont]."). And as the Eleventh Circuit has noted, "modern methods of transportation and communication have significantly ameliorated" the burden on a Canadian corporation litigating in the United States. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 632 (11th Cir.1996). Moreover, a Canadian defendant litigating in the United States finds a judicial system "rooted in the same common law traditions" as that of Canada. *Theunissen,* 935 F.2d at 1462; *see Ensign–Bickford,* 817 F.Supp. at 1031 ("[T]he unfairness of forcing a foreign party to litigate in an unfamiliar legal system is alleviated here by the fact that the Canadian legal system is similar in many respects to the legal system in the United States."). In sum, then, the exercise of personal jurisdiction does not impose a heavy burden on AFL.

 Indeed, any burden on AFL is more than counterbalanced by the interests of Kentucky and Aristech. With respect to the interest of the forum state, this case involves a product manufactured in and shipped from Kentucky. A state has a significant interest in resolving a suit when "a contract calling for substantial production of goods is entered into, with the production of goods and other performance under the contract to take place entirely within the forum state." *In–Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 232 (6th Cir.1972). This interest is magnified when, as here, the transaction is expressly governed by the law of the forum state. *See CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir.1996); *LAK, Inc. v. Deer Creek Enters.,* 885 F.2d 1293, 1295 (6th Cir.1989) ("The parties having elected to invoke the benefits of Florida law for deciding disputes under the contract, there is obviously much to be said in favor of letting such disputes be resolved in a Florida court.").

And as for Aristech, it undoubtedly has an interest in receiving payment for its goods. *See Command–Aire Corp. v. Ontario Mechanical Sales & Serv. Inc.,* 963 F.2d 90, 95 (5th Cir.1992). Further, because the trial is likely to involve witnesses from both Kentucky and Ontario, litigating in Canada would not necessarily be more efficient than litigating in Kentucky. Finally, we note that this is not the sort of case that strongly implicates the procedural and substantive policies of Canada and hence counsels against the exercise of personal jurisdiction. *See Glinka,* 199 B.R. at 497.

For these reasons, we find that the district court failed to properly balance AFL's minimal burden of defending a suit in Kentucky with the interests of Aristech and the forum state. Accordingly, since the exercise of personal jurisdiction is proper, we REVERSE.