**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 23 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

OREN L. BENTON,

      Appellant-Plaintiff,

v.

CAMECO CORPORATION,
a Canadian corporation,

      Appellee-Defendant.

No. 02-1548

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 00-S-2336)**

---

G. Stephen Long (Jennifer A. Schaffner with him on the briefs), of Shughart
Thomson & Kilroy, P.C., Denver, Colorado, and William E. Quirk of Shughart
Thomson & Kilroy, P.C., Kansas City, Missouri, for Appellant-Plaintiff.

Daniel F. Wake (Jay S. Horowitz with him on the briefs), of Horowitz & Wake,
Denver, Colorado, for Appellee-Defendant.

---

Before **HENRY, HOLLOWAY,** and **ANDERSON,** Circuit Judges.

---

**HENRY**, Circuit Judge.

This case arises from a contract dispute between a Colorado resident, the plaintiff Oren L. Benton, and a Canadian company, the defendant Cameco Corporation. Mr. Benton and Cameco entered into a Memorandum of Understanding in which Mr. Benton agreed to purchase uranium from Cameco for resale. The agreement also set forth the key terms of a planned joint venture to conduct uranium trading activities. When Cameco's board did not approve the transactions contemplated by the Memorandum of Understanding, Mr. Benton sued Cameco in federal district court in Colorado, asserting claims for breach of contract and tortious interference with existing and prospective business relationships. The district court granted Cameco's motion to dismiss on the grounds that Cameco did not have sufficient contacts with Colorado to allow the court to exercise personal jurisdiction over Cameco. Mr. Benton appealed. Because we agree with the district court that personal jurisdiction is inappropriate in this case, we AFFIRM.

## I. BACKGROUND

Mr. Benton is a Colorado resident who has been engaged in the business of mining, milling, brokering, and trading uranium for many years. Cameco is a Saskatchewan company organized under the Canada Business Corporations Act with its principal offices in Saskatchewan.

Between 1988 and 1996, Mr. Benton's NUEXCO Trading Company ("NTC") and Cameco entered into a series of approximately two dozen transactions concerning the sale of uranium. These transactions typically consisted of Cameco selling uranium to NTC, buying uranium from NTC, or swapping its uranium for a like amount of NTC's uranium. The transactions were "spot market" transactions, meaning that "each transaction involved separate, independent contractual negotiations, as opposed to a series of sales or trades pursuant to a single, longer term contract." Aplt's Br. at 5-6 n.2. Such transactions were made in the ordinary course of business and did not require the approval of Cameco's Board of Directors.

In November 1994, Mr. Benton and Cameco entered into the Memorandum of Understanding ("MOU"), the document at issue in this case. The MOU describes two separate transactions between Mr. Benton and Cameco. First, Cameco would provide Mr. Benton's affiliates with quantities of uranium to satisfy Mr. Benton's sales commitments to eighteen different utility companies around the world. Second, the MOU provided for the creation of a joint venture pursuant to which the parties, under Cameco's control, would conduct future uranium trading activities.

The MOU conditioned the agreement to pursue these transactions upon several factors, including (a) a satisfactory due diligence review by Cameco of

3

Mr. Benton's eighteen purported uranium sales contracts and (b) the approval of Cameco's Board of Directors. *See* Aplt's App. at 133-134 (MOU).

After the MOU was signed, members of Cameco's staff spent two days in Colorado conducting the due diligence review of Mr. Benton's eighteen supply contracts. In December 1994, Cameco's Board of Directors met and declined to approve any of the transactions listed in the MOU.

In November 2000, Mr. Benton filed this case against Cameco in federal district court in Colorado, alleging breach of contract and tortious interference with existing and prospective business relationships. Cameco filed a motion to dismiss, arguing, *inter alia*, that the district court lacked personal jurisdiction over Cameco. The district court agreed, reasoning that Cameco had not established minimum contacts with Colorado because (1) Cameco's contract negotiations with Mr. Benton, a Colorado resident, were insufficient to create minimum contacts with Colorado; (2) under 16 proposed sales contracts, delivery of uranium products would not take place in Colorado, as there are no uranium processing facilities there; (3) Cameco's staff's brief visit to Colorado was insufficient to establish minimum contacts with Colorado; (4) the existence of a Colorado subsidiary of Cameco did not establish the necessary minimum contacts as the subsidiary was not an alter-ego of Cameco; and (5) it would be unfair to require a foreign corporation to defend this case in Colorado.

4

In addition, the district court stated that "[a]lthough it is technically unnecessary and possibly inappropriate for the Court to consider the merits of the claims where it has found that it lacks jurisdiction . . . it [felt] compelled to do so." Aplt's App. at 191-92 (Dist. Ct. Order, filed Nov. 15, 2002). On the merits, the court concluded that Mr. Benton had failed to state either a breach of contract or a tort claim. On the contract claim, the district court found that because "Benton's complaint concede[d] that the MOU expressly condition[ed] the existence of [the] potential transactions upon certain occurrences or performance" and because Mr. Benton affirmatively alleged that one of these conditions, the approval of the Cameco board of directors, did not occur, "there could be no contract to breach." Id. at 192-93. As to the tort claim, the district court found that "Cameco's directors were entitled if not mandated to exercise their discretion in their review of the proposed transactions," and "the fact that the board of directors did not approve the agreement cannot constitute a lack of bona fide honesty or good faith simply because it was not consistent with the feeling of security" that Mr. Benton obtained from Cameco. Id. at 194.

Mr. Benton now appeals the rulings of the district court. We disagree with the district court's conclusion that Cameco lacked minimum contacts with Colorado; however, we hold that "traditional notions of fair play and substantial justice," *Asahi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S. 102, 113

5

(1987), counsel against an exercise of personal jurisdiction over Cameco.

Therefore, we conclude that the district court properly dismissed Mr. Benton's

claims because it lacked personal jurisdiction over Cameco.[1]

## II. DISCUSSION

"We review de novo the district court's dismissal for lack of personal

jurisdiction." *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295

(10th Cir. 1999). "[W]hen the court's jurisdiction is contested, the plaintiff has

the burden of proving jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d

1503, 1505 (10th Cir. 1995). "When, as in this case, a district court grants a

motion to dismiss for lack of personal jurisdiction without conducting an

evidentiary hearing, the plaintiff need only make a prima facie showing of

personal jurisdiction to defeat the motion." *Soma*, 196 F.3d at 1295. "We resolve

all factual disputes in favor of the plaintiff in determining whether plaintiff has

made a prima facie showing." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071,

1075 (10th Cir. 1995). Mr. Benton contends he has made a prima facie showing

of the court's jurisdiction over Cameco.

"To obtain personal jurisdiction over a nonresident defendant in a diversity

---

[1] Because we dismiss the case for lack of personal jurisdiction, we do not address the district court's dismissal for failure to state a claim.

6

action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Soma*, 196 F.3d at 1295 (internal quotation marks omitted). "Colorado's long arm statute is coextensive with constitutional limitations imposed by the due process clause. Therefore, if jurisdiction is consistent with the due process clause, Colorado's long arm statute authorizes jurisdiction over a nonresident defendant." *Day v. Snowmass Stables, Inc.*, 810 F.Supp. 289, 291 (D. Colo. 1993) (citing *Mr. Steak, Inc. v . District Court*, 574 P.2d 95, 96 (Colo. 1978)).

Our opinion in *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086 (10th Cir. 1998), carefully and succinctly lays out the well-established constitutional analysis for personal jurisdiction:

> "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). Therefore, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The requirement that "minimum contacts" be present protects a defendant, who has no meaningful contact with a state, from the burdens of defending a lawsuit far from home in a forum where the substantive and procedural laws may be quite different from those with which the litigant is familiar. *See id.* at 292. . . .
> The "minimum contacts" standard may be met in two ways. First, a court may, consistent with due process, assert *specific* jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation

7

results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (internal quotations omitted). Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984).

*Id*. at 1090-91.

Mr. Benton asserts that Cameco is subject to both specific and general jurisdiction. We examine each below.

## A. Specific Jurisdiction

A specific jurisdiction analysis involves a two-step inquiry. First we must consider whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. "Second if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *OMI,* 149 F.3d at 1091 (quoting *Asahi*, 480 U.S. at 113).

### 1. Minimum Contacts

In determining whether a defendant has established minimum contacts with the forum state, we examine whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v.*

8

*Denckla*, 357 U.S. 235, 253 (1958). A defendant's contacts are sufficient if "the defendant purposefully directed its activities at residents of the forum, and . . . the plaintiff's claim arises out of or results from 'actions by the defendant *himself* that create a substantial connection with the forum state.'" *OMI*, 149 F.3d at 1091 (quoting *Asahi*, 480 U.S. at 109) (internal citations omitted).

Mr. Benton asserts that Cameco purposefully directed it activities at Colorado because:

> [1] Cameco entered into [the MOU] with a Colorado resident that set forth the key terms of a joint venture;
> [2] Cameco would have partially performed the transactions contemplated by the MOU in Colorado in that it would have made payments to Benton in Colorado;
> [3] Cameco sent employees to Colorado to conduct a due diligence review of Benton's business in connection with the MOU;
> [4] Cameco sent significant correspondence to Benton in Colorado; and
> [5] Cameco committed a tortious act by interfering with Benton's business relationships, the effects of which were suffered in Colorado.

Aplt's Br. at 13. Mr. Benton also asserts that the MOU created a current and binding relationship for the purchase and sale of uranium to satisfy Mr. Benton's eighteen utilities contracts, creating an additional contact between Cameco and Colorado resident Mr. Benton. Aplt's Reply Br. at 2.

Cameco, on the other hand, contends that it has not established minimum contacts with the state of Colorado. It points out that it "has no bank accounts in Colorado, has no office or property in Colorado, is not licensed to do business in Colorado, has no employees in Colorado, does not advertise or solicit business in

9

Colorado[,] and does not pay taxes in Colorado." Aple's Br. at 4. Furthermore, Cameco argues that personal jurisdiction is improper because (1) the proposed transactions of uranium with Mr. Benton would not take place in Colorado, as none of the eighteen utilities Mr. Benton had contracted to supply are in Colorado and there are no uranium processing facilities in Colorado; (2) it was Mr. Benton, not Cameco, who solicited the transactions; (3) neither the communications between the two companies, nor the execution of the MOU, nor the brief due diligence review were sufficient to establish minimum contacts; (4) Cameco never made any payments to Mr. Benton in Colorado; (5) Mr. Benton's residence in Colorado is a mere coincidence that had no role in the parties' dealings; and (6) the economic impact of Cameco's alleged breach of contract and tortious activity on Mr. Benton's Colorado business is not sufficient to establish jurisdiction.

We note at the outset that this is a very close case. We emphasize that the question of "[w]hether a non-resident defendant has the requisite minimum contacts with the forum state to establish in personam jurisdiction must be decided on the particular facts of each case." *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996) (internal quotation marks omitted). The facts of this case place it in the grey area of personal jurisdiction analysis. However, we hold that there are enough contacts between Cameco and Colorado to establish what may be accurately termed "minimum" contacts.

10

A contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum. *Burger King*, 471 U.S. at 473. However, "with respect to interstate contractual obligations . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (internal quotation marks omitted). In a contract case, relevant factors for assessing minimum contacts include "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id*. at 479.

In this case, the parties entered into a "Memorandum of Understanding" that proposed the terms of several uranium transactions and a joint venture to pursue uranium trading activities. The "prior negotiations" and the "contemplated future consequences" of the MOU centered around the continuing business relationship between Cameco and Mr. Benton. Although the uranium transactions themselves would occur in places other than the state of Colorado, the business end of the transactions – the brokering of the deals, the coordination of the parties, the exchange of money and information between the parties, and the decision-making behind the joint venture – would take place partially in Canada, where Cameco has its principal place of business, and partially in Colorado,

11

where Mr. Benton has his principal place of business. Indeed, the instant dispute does not concern the uranium transactions, but the conduct of the parties in redefining their business relationship. By engaging in a business relationship with Mr. Benton, who operates his business from Colorado, Cameco "'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King*, 471 U.S. at 475 (quoting *Hanson*, 357 U.S. at 253).

Although "phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts," *Far West*, 46 F.3d at 1077, the correspondence exchanged between Cameco and Mr. Benton during the negotiation of the MOU provides additional evidence that Cameco pursued a business relationship with a Colorado business. Even more significant to our minimum contacts analysis, Cameco sent several of its employees to Mr. Benton's office in Colorado to conduct the due diligence review required by the MOU. Cameco not only established a business relationship with Mr. Benton's Colorado-based company on paper, but it also sent representatives to Colorado, the forum state, in order to maintain and further that business relationship. Although the due diligence review would have not been enough, in isolation, to establish minimum contacts, it represents an additional instance in which Cameco purposefully and knowingly availed itself of a business opportunity in Colorado.

12

Cameco argues that Mr. Benton's presence in Colorado is a mere coincidence that is inadequate to confer specific jurisdiction over Cameco. However, we do not agree that "[t]he quality and nature" of Cameco's contact with Colorado was "so . . . random, fortuitous, [and] attenuated that it cannot fairly be said that [Cameco] should reasonably anticipate being haled into court" in Colorado. *Burger King*, 471 U.S. at 486 (citations and quotation marks omitted). This is not a case in which the defendant's only contacts with the forum resulted from "the mere unilateral activity"of the plaintiff. *See World-Wide Volkswagen*, 444 U.S. at 298 (holding that personal jurisdiction over defendant car manufacturer was inappropriate when defendant's only contacts with the forum resulted from plaintiff's unilateral activity of driving defendant's product into another state); *Hanson*, 357 U.S. 235 (holding that personal jurisdiction over defendant trustee was inappropriate when defendant's only contacts with the forum resulted from plaintiff-settlor's unilateral activity of moving to Florida). Rather, Cameco voluntarily conducted business with Mr. Benton, whom Cameco knew to be located in Colorado for many years prior to and at the time of the events at issue. Again, Cameco's sending employees to conduct the due diligence review at Mr. Benton's place of business demonstrates Cameco's willingness to engage in bilateral business activity taking place in Colorado.

The touchstone of a minimum contacts analysis is whether "the defendant's

13

conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. Cameco has transacted business with Mr. Benton since at least 1988, and at all times Mr. Benton has been located in Colorado. When Cameco negotiated and entered into the MOU in 1994, it voluntarily and knowingly entered into a relationship with a Colorado resident. Thus, Cameco "purposefully directed his activities at residents of the forum, and the litigation result[ed] from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 472 (internal quotation marks omitted). Over the course of Cameco's negotiations with Mr. Benton, Cameco established several minor contacts with the state of Colorado. Although none of these contacts individually could support a finding of minimum contacts, we find that in the aggregate, Cameco's "conduct and connection with the forum State [were] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. Thus, we hold that Cameco had sufficient minimum contacts to support an exercise of personal jurisdiction.

### 2. Traditional Notions of Fair Play and Substantial Justice

Although we have found that there are sufficient minimum contacts between Cameco and Colorado, we are also required to "consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of

14

fair play and substantial justice." *OMI*, 149 F.3d at 1091.  Therefore, we inquire "whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case." *Id*.

> In assessing whether an exercise of jurisdiction is reasonable, we consider [a] the burden on the defendant, [b] the forum state's interest in resolving the dispute, [c] the plaintiff's interest in receiving convenient and effective relief, [d] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [e] the shared interest of the several states in furthering fundamental social policies.

*Id*. at 1095.  The analyses of minimum contacts and reasonableness are complementary, such that

> "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]."

*Id*. at 1092 (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir.1994)).  Applying this framework, we conclude that an exercise of personal jurisdiction over Cameco in the District of Colorado would be inconsistent with traditional notions of fair play and substantial justice.

**(a) Burden on Defendant of Litigating in the Forum**

"[T]he burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction. . . .

15

When the defendant is from another country, this concern is heightened and 'great care and reserve should be exercised' before personal jurisdiction is exercised over the defendant." *Id*. at 1096 (quoting *Asahi*, 480 U.S. at 114).

In this case, the burden on the defendant is significant. Cameco is a Canadian corporation with principal offices in Saskatchewan, and it has no office or property in Colorado, is not licensed to do business in Colorado, and has no employees in Colorado. *See id.* (finding burden on defendants significant when Canadian corporation had no license to conduct business in Kansas, maintained no offices in Kansas, and employed no agents in Kansas). Cameco's officers and employees "will not only have to travel outside their home country, they will also be forced to litigate the dispute in a foreign forum unfamiliar with the Canadian law governing the dispute." *Id*. Therefore, this factor weighs against an exercise of personal jurisdiction over Cameco.

**(b) Forum State's Interest in Adjudicating the Dispute**

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *Id*. "The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws." *Id*. In this case, this factor favors both Mr. Benton and Cameco. Mr. Benton is a Colorado resident, and the state has an interest in providing him a forum for his suit against Cameco. However,

16

the parties agree that Canadian law will govern the dispute. Therefore, this factor does not weigh heavily in favor of either party.

### (c) Plaintiff's Interest in Convenient and Effective Relief

This factor

> hinges on whether the Plaintiff may receive convenient and effective relief in another forum. This factor may weigh heavily in cases where a plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit.

*Id*. at 1097. Because Canadian law governs the suit and because Mr. Benton has not established that litigating the matter in Canada would cause undue hardship to him, we find that Mr. Benton would be able to receive convenient and effective relief by bringing suit in Canada. Therefore, this factor weighs in Cameco's favor, against an exercise of jurisdiction.

### (d) Interstate Judicial System's Interest in Obtaining Efficient Resolution

This factor asks "whether the forum state is the most efficient place to litigate the dispute." *Id*. "Key to the inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* (citations omitted). Based on the nature of Mr. Benton's claims against Cameco, many of the witnesses in the dispute would be directors, officers, and

17

employees of Cameco, all of whom are located in Canada. Likewise, the alleged wrong, Cameco's failure to approve the transactions in the MOU, occurred in Canada, and Canadian law will govern the dispute. Moreover, Mr. Benton need not litigate the action in Colorado to avoid piecemeal litigation. *Id.* Therefore, we find that litigating the dispute in Colorado would not be more efficient than in Canada.

**(e)    States' Interest in Furthering Fundamental Substantive Social Policies**

The fifth factor of the reasonableness inquiry "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations." *Id.* "The Supreme Court has cautioned that 'great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.'" *Id*. at 1097-98 (quoting *Asahi*, 480 U.S. at 115). Therefore, we must look closely at the extent to which an exercise of personal jurisdiction by Colorado over Cameco interferes with Canada's sovereignty. *Id*. Relevant facts include "whether one of the parties is a citizen of the foreign nation, whether the foreign nation's law governs the dispute, and whether the foreign nation's citizen chose to conduct business with a forum resident." *Id.* at 1098 (citations omitted). Cameco did chose to conduct business with Mr. Benton, a resident of Colorado. However, Cameco is a Canadian corporation, Canadian law will govern the dispute, and we are required

18

to give deference to the international nature of this case. Therefore, we find that an exercise of personal jurisdiction would affect Canada's policy interests.

We have already concluded that Cameco's contacts with Colorado were quite limited, barely satisfying the minimum contacts standard. As a result, Cameco need not make a particularly strong showing in order to defeat jurisdiction under this reasonableness inquiry. *OMI*, 149 F.3d at 1092. Because the majority of the five reasonableness factors weigh in Cameco's favor, we hold that an exercise of personal jurisdiction over Cameco would offend traditional notions of fair play and substantial justice.

## B. General Jurisdiction

Although we have found that the Colorado district court lacks specific jurisdiction over Cameco, we must further inquire whether general jurisdiction exists. "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *OMI*, 149 F.3d at 1091 (internal quotation marks omitted).

Mr. Benton asserts that Cameco has such contacts with Colorado because (1) in addition to the dealings at issue in this case, Cameco and Mr. Benton engaged in two dozen "spot market" transactions between 1988 and 1996, and (2) Cameco has a wholly-owned U.S. subsidiary, Cameco, Inc., that is licensed to do

19

business in Colorado.  We disagree.  First, the occurrence of two dozen transactions taking place over a period of eight years, with the last taking place at least four years before suit was filed in November 2000, is not sufficient to meet the high burden of demonstrating that Cameco had "continuous and systematic general business contacts."  Second, as the district court observed, Mr. Benton has not alleged nor produced evidence to show that Cameco, Inc., is the general agent or alter ego of Cameco.  His allegation that "there is an overlap of current and former officers and directors of Cameco and Cameco, Inc.," Aplt's Br. at 21 – an overlap that actually consists of one common officer – is insufficient proof.  "[A] holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity."  *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974).  Therefore, the activities of Cameco, Inc., in Colorado cannot be imputed to Cameco for the purpose of assessing Cameco's general business contacts with Colorado.  Because Cameco has not established "continuous and systematic general business contacts" with Colorado, an exercise of personal jurisdiction over Cameco is improper.

## C. Failure to State a Claim

Because we have concluded that the court lacks personal jurisdiction over Cameco, we need not address the district court's determination that Mr. Benton

20

failed to state a claim.

### III. CONCLUSION

Although we hold that there are minimum contacts in this case, those contacts are so weak that our evaluation of "whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case," *OMI*, 149 F.3d at 1091, takes on more importance. Because a majority of the reasonableness factors weigh against an exercise of personal jurisdiction, we find that an exercise of specific personal jurisdiction by the Colorado district court would be inappropriate under the facts of this case. Additionally, the requirements of general jurisdiction are not met. Therefore, we AFFIRM the district court's dismissal for lack of personal jurisdiction.

**HOLLOWAY**, Circuit Judge, concurring in part and dissenting in part:

The majority opinion concedes that minimum contacts are sufficiently shown for specific jurisdiction and I agree. I am, however, unable to agree that Cameco has established this exercise of such specific jurisdiction here is so unreasonable as to be a violation of due process by offending traditional notions of fair play and substantial justice. Accordingly, I must respectfully dissent from the majority's holding of a due process violation in that respect and its disposition.

The majority found that Cameco had "purposely directed [its] activities" at a resident of Colorado and that Benton's claims are premised upon "injuries that arise out of or relate to those activities." Nonetheless, the majority concludes that the exercise of personal jurisdiction in this case by Colorado would violate Due Process because hailing Cameco into a Colorado court would "offend traditional notions of fair play and substantial justice." I disagree for two principal reasons: Cameco's contacts with Colorado were not "quite limited" and Cameco failed to proffer the requisite "compelling case" that the exercise of personal jurisdiction in this case is unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

1

## A

### *More than limited contacts*

The majority concludes that Cameco had only by a very slim margin established minimum contacts with Colorado in respect to the instant litigation. In so concluding, the majority noted that Cameco's contacts with Colorado were "minor" and supported a finding of minimum contacts only in the aggregate. While this reasoning may be correct insofar as it is necessary to look at a defendant's contacts in the aggregate, it fails to recognize that the whole is greater than the sum of its parts.

In determining whether a defendant's contacts with the forum state are sufficient for a valid exercise of jurisdiction, the focus is not on the form or duration or number of those contacts but rather on whether those contacts "represent an effort by the defendant to purposefully avail itself of the privilege of conducting activities within the forum State." *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988) (internal quotation marks omitted). In other words, "the mere quantum of contacts between the forum and the defendant is not determinative of this issue." *Continental Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1314 (10th Cir. 1982). Accordingly, "So long as it creates a substantial connection with the forum, even a single act can support

2

jurisdiction." *Burger King Corp.*, 471 U.S. at 475 n.18.

Here, Cameco's contacts with Colorado were made as part of a deliberate effort by Cameco to enter into a contract with a known resident of Colorado. As the majority noted, the instant lawsuit arose from an alleged breach of a Memorandum of Understanding (MOU) between Cameco and Benton.[1] The acts contemplated by the MOU, future purchases of uranium and a joint venture, were to be partly performed in Colorado. *Id.* at 103. In addition, the formation of the MOU involved Cameco negotiating over the telephone and by mail with Colorado residents and Cameco sending two of its employees to Colorado to conduct a due diligence review.[2] *Id.*

These contacts, alone and in the aggregate, are clear manifestations of Cameco's desire to enter into a business relationship with a Colorado resident. And, when Cameco allegedly interrupted this relationship, the resulting damages accrued exactly where expected, in Colorado and borne by Colorado citizens. *Id.* at 17, 19. Under these circumstances, even if Cameco's contacts with Colorado were not numerous, this is a case where upon executing its agreement with

---

[1] The MOU was dated November 1, 1994, and executed for Cameco by Gerald Grandy, then Vice President of Fiances and Business Development and Oren L. Benton. Appellant App. at 134.

[2] Since corporations are legal fictions, a corporation's contacts with a forum state are created through the acts of its employees and agents. *International Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945).

3

Benton, Cameco should "reasonably anticipate being haled into court" in Colorado. *World-Wide Volkswagon*, 444 U.S. 286, 297 (1980).

**B**

*Traditional notions of fair play and substantial justice*

As the majority correctly notes, "the reasonableness prong of the due process inquiry evokes a sliding scale . . . ." *OMI Holdings v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir. 1998). Thus, "depending on the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (10th Cir. 1996). I believe the strength of Cameco's contacts with Colorado to be substantially stronger than the majority and would therefore require a greater showing of unreasonableness by Cameco. In any event, however, we are in agreement that Cameco has "purposefully directed [its] activities" at Colorado.

"[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."

4

*Burger King*, 471 U.S. at 477 (emphasis added). In this case, that means Cameco must demonstrate that litigating this dispute in Colorado would be "so gravely difficult and inconvenient," that it would be at a "severe disadvantage in comparison to [Benton]." *Id.* I believe the majority errs in concluding Cameco has satisfied this burden by overestimating the difficulties Cameco would face were it to litigate these claims in Colorado, by underestimating the interest Colorado has to resolve this dispute, and by concluding, without support from the record, that Canada would be the most efficient venue.

### *i*

### *The Burden on Cameco*

The majority's conclusion that the exercise of personal jurisdiction in this case would be unreasonable rests primarily upon what I believe to be an exaggeration of the burden on Cameco to litigate in Colorado. In particular, the majority is concerned that litigation in Colorado will require Cameco employees to "travel outside their home country" and litigate the dispute "in a forum unfamiliar with the Canadian law governing the dispute." Both of these concerns are overwrought.

As the majority noted, where a foreign defendant is forced to litigate in the

5

United States, "great care and reserve should be exercised before personal jurisdiction is exercised" because of the heightened burden on the defendant. *OMI*, 149 F.3d at 1096.  However, as the Supreme Court noted nearly a half century ago, "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *McGee v. International Life Ins. Co.*, 255 U.S. 220, 223 (1957).  Since that time, transportation has become even more convenient.  *See Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 632 (11th Cir. 1996) (holding the burden of forcing a Canadian defendant to litigate in Florida was "uncompelling"); *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 629 (6th Cir. 1998) (holding that it was reasonable to require a defendant from Ontario to litigate in Kentucky because Ontario was "only a short plane flight" away).  In this case, Cameco's headquarters in Saskatchewan is only a reasonable journey from Colorado and Cameco has already demonstrated its ability to make that trip by sending its employees to Colorado to conduct the due diligence review for the MOU.  Appellant App. at 103.

In addition, even though Canadian and United States law are not completely congruent, both are "rooted in the same common law traditions." *Aristech Chem.*, 138 F.3d at 629.  That commality is especially acute in this case.  Here, Benton's primary claim is that Cameco breached the implied duty of good faith and fair

6

dealing. This duty of good faith is similar in both United States and Canadian law. *See* David Stack, *The Two Standards of Good Faith in Canadian Contract Law*, 62 Sask. L. Rev. 201, 202-03 (1999) (commenting that in Canadian contract law, the doctrine of good faith has been described and applied in similar fashions as in United States law). Moreover, any differences may be easily discovered and dealt with as Canadian law is readily available electronically on both Westlaw and LexisNexis. Thus, "The unfairness of forcing a foreign party to litigate in an unfamiliar legal system is alleviated here by the fact that the Canadian legal system is similar in many respects to the legal system in the United States." *Ensign-Bickford Co. v. ICI Explosives USA, Inc.*, 817 F. Supp. 1018, 1031 (D. Conn. 1993); *see also Southern Sys., Inc. v. Torrid Oven Ltd.*, 58 F. Supp. 2d 843, 852 (W.D. Tenn. 1999).

In addition, Cameco cannot credibly claim that forcing it to travel to and litigate within the United States is akin to forcing it to retrieve golden apples of the Hesperides. In addition to owning a subsidiary based in Nevada, Appellant App. at 75, Cameco operates major uranium mines in both Wyoming and Nebraska, Cameco 2003 Annual Report 18 (2003), *available at* http://www.cameco.com/investor_relations/annual/2003/common/pdfs/2003_ar_full-72dpi.pdf. Thus, Cameco employees regularly operate in and travel to the United States to conduct economic activity. Accordingly, I am satisfied that

7

forcing Cameco to litigate this dispute in Colorado is not "gravely difficult and inconvenient." *Burger King*, 471 U.S. at 477.

## ii

### *The Forum's interest*

Another factor to be considered in determining whether the exercise of personal jurisdiction is reasonable in this case is Colorado's interest in providing a forum. The majority concedes that Colorado has an interest but concludes that this interest is attenuated by the fact Canadian rather the Colorado law applies. I disagree.

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI*, 149 F.3d 1092. This interest is separate from and in addition to the interest a state may have "where resolution of the dispute requires a general application of the forum state's law." *Id.*; *See Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987) (discussing the interest of various states to effectuate its "substantive policy" separate from the interest of the *forum* state in providing a forum for its own resident). Thus, the fact that the plaintiff is a resident of the forum state supports the finding that the exercise of personal jurisdiction is

8

reasonable irrespective of what state's law may apply.

In this case, Benton is a resident of the forum state. In addition, he alleges that the injuries inflicted upon him by Cameco exceed 100 million dollars. Thus, Colorado has an "important interest" in providing a forum in which Benton can seek redress.

That Benton is a resident of the forum state also distinguishes the instant case from *OMI* holdings, a case heavily relied upon by the majority. In *OMI*, none of the parties were residents of the forum state and we noted specifically that no party was claiming the defendants "committed a tortious act against or breached a contract with a [forum] resident." 149 F.3d at 1096. Were this otherwise, we observed that the forum's "interest in litigating the suit would undoubtedly be much higher." *Id.*

The importance that the plaintiff be a resident of the forum state was also emphasized in *Asahi*. There, both parties to the litigation were not only alien to the forum state, but alien to the country as well. *Asahi*, 480 U.S. at 114. Based upon that fact, Justice O'Connor's plurality portion of the opinion noted that "[b]ecause the plaintiff is not a [forum state] resident, [the forum state's] legitimate interest in the dispute have considerably diminished." *Id.* This case does not involve a non-forum plaintiff as Cameco is alleged to have both breached a contract with and committed a tortious act against a forum resident.

9

Appellant App. at 13-14.

### iii

*The Interstate Judicial System's Interest in Obtaining Efficient Resolution*

This factor in the reasonableness inquiry is "whether the forum state is the most efficient place to litigate the dispute." *OMI*, 149 F.3d at 1097. Factors to be considered in determining efficiency include the location of witnesses, the situs of the injury, the controlling law, and the prevention of piecemeal litigation. Based upon these factors, the majority was convinced Canada would clearly be the more efficient venue. I do not believe the case to be so clear.

While several factors do not favor Colorado as a forum, the location of potential witnesses is ambiguous. Cameco asserts that the majority of the employees involved in the MOU reside in Canada. However, Cameco also admits that some live in Minnesota. Moreover, Benton asserts that there are "approximately one dozen potential witnesses with pertinent relevant knowledge that reside in Colorado." Appellant App. at 103. Thus, no matter which forum is selected, Colorado or Canada, a substantial number of witnesses may need to travel. And, given the demonstrated ability of Cameco employees to travel to and from the United States, I do not believe Colorado is materially more inefficient

10

than Canada.

## C

*Conclusion*


Given the substantial and deliberate contacts Cameco engaged in with the State of Colorado through one of its residents and the less than compelling case of unfairness by litigating there, I conclude that due process is not offended by the exercise of personal jurisdiction over Cameco in this case. Accordingly, I respectfully dissent from the holding that litigation in Colorado would violate traditional notions of fair play and substantial justice.