HOLLOWAY, Circuit Judge,
concurring in part and dissenting in part:
The majority opinion concedes that minimum contacts are sufficiently shown for specific jurisdiction and I agree. I am, however, unable to agree that Cameco has established this exercise of such specific jurisdiction here is so unreasonable as to be a violation of due process by offending traditional notions of fair play. and substantial justice. Accordingly, I must respectfully dissent from the majority’s holding of a due process violation in that respect and its disposition.
The majority found that Cameco had “purposely directed [its] activities” at a resident of Colorado and that Benton’s claims are premised upon “injuries that arise out of or relate to those activities.” Nonetheless, the majority concludes that the exercise of personal jurisdiction in this case by Colorado would violate Due Process because hailing Cameco into a Colorado court would “offend traditional notions of fair play and substantial justice.” I disagree for two principal reasons: Came-co’s contacts with Colorado were not “quite limited” and Cameco failed to proffer the requisite “compelling case” that the exercise of personal jurisdiction in this case is *1082 unreasonable. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).
A

More than limited contacts

The majority concludes that Cameco had only by a very slim margin established minimum contacts with Colorado in respect to the instant litigation. In so concluding, the majority noted that Cameco’s contacts with Colorado were “minor” and supported a finding of minimum contacts only in the aggregate. While this reasoning may be correct insofar as it is necessary to look at a defendant’s contacts in the aggregate, it fails to recognize that the whole is greater than the sum of its parts.
In determining whether a defendant’s contacts with the forum state are sufficient for a valid exercise of jurisdiction, the focus is not on the form or duration or number of those contacts but rather on whether those contacts “represent an effort by the defendant to purposefully avail itself of the privilege of conducting activities within the forum State.” Rambo v. American Southern Ins. Co., 839 F.2d 1415, 1418 (10th Cir.1988) (internal quotation marks omitted). In other words, “the mere quantum of contacts between the forum and the defendant is not determinative of this issue.” Continental Am. Corp. v. Camera Controls Corp., 692 F.2d 1309, 1314 (10th Cir.1982). Accordingly, “So long as it creates a substantial connection with the forum, even a single act can support jurisdiction.” Burger King Corp., 471 U.S. at 475 n. 18, 105 S.Ct. 2174.
Here, Cameco’s contacts with Colorado were made as part of a deliberate effort by Cameco to enter into a contract with a known resident of Colorado. As the majority noted, the instant lawsuit arose from an alleged breach of a Memorandum of Understanding (MOU) between Cameco and Benton.[1] The acts contemplated by the MOU, future purchases of uranium and a joint venture, were to be partly performed in Colorado. Id. at 103. In addition, the formation of the MOU involved Cameco negotiating over the telephone and by mail with Colorado residents and Cameco sending two of its employees to Colorado to conduct a due diligence review.[2] Id.
These contacts, alone and in the aggregate, are clear manifestations of Cameco’s desire to enter into a business relationship with a Colorado resident. And, when Ca-meco allegedly interrupted this relationship, the resulting damages accrued exactly where expected, in Colorado and borne by Colorado citizens. Id. at 17, 19. Under these circumstances, even if Cameco’s contacts with Colorado were not numerous, this is a case where upon executing its agreement with Benton, Cameco should “reasonably anticipate being haled into court” in Colorado. World-Wide Volkswagen v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
B

Traditional notions of fair play and substantial justice

As the majority correctly notes, “the reasonableness prong of the due process *1083 inquiry evokes a sliding scale.... ” OMI Holdings v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1092 (10th. Cir.1998). Thus, “depending on the strength of the defendant’s contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry.” Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (10th Cir.1996). I believe the strength of Cameco’s contacts with Colorado to be substantially stronger than the majority and would therefore require a greater showing of unreasonableness by Cameco. In any event, however, we are in agreement that Cameco has “purposefully directed [its] activities” at Colorado.
“[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.” Burger King, 471 U.S. at 477, 105 S.Ct. 2174 (emphasis added). In this case, that means Cameco must demonstrate that litigating this dispute in Colorado would be “so gravely difficult and inconvenient,” that it would be at a “severe disadvantage in comparison to [Bentón].” Id. I believe the majority errs in concluding Cameco has satisfied this burden by overestimating the difficulties Cameco would face were it to litigate these claims in Colorado, by underestimating the interest Colorado has to resolve this dispute, and by concluding, without support from the record, that Canada would be the most efficient venue.
i

The Burden on Cameco

The majority’s conclusion that the exercise of personal jurisdiction in this case would be unreasonable rests primarily upon what I believe to be an exaggeration of the burden on Cameco to litigate in Colorado. In particular, the majority is concerned ■ that litigation in Colorado will require Cameco employees to “travel outside their home country” and litigate the dispute “in a forum unfamiliar with the Canadian law governing the dispute.” Both of these concerns are overwrought.
As the majority noted, where a foreign defendant is forced to litigate in the United States, “great care and reserve should be exercised before personal jurisdiction is exercised” because of the heightened burden on the defendant. OMI, 149 F.3d at 1096. However, as the Supreme Court noted nearly a half century ago, “modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity.” McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Since that time, transportation has become even more convenient. See Sculptchair, Inc. v. Century Arts, 94 F.3d 623, 632 (11th Cir.1996) (holding the burden of forcing a Canadian defendant to litigate in Florida was “uncompelling”); Aristech Chem. Int’l Ltd. v. Acrylic Fabricators Ltd., 138 F.3d 624, 629 (6th Cir.1998) (holding that it was reasonable to require a defendant from Ontario to litigate in Kentucky because Ontario was'“only a short plane flight” away). In this case, Came-co’s headquarters in Saskatchewan is only a reasonable journey from Colorado and Cameco has already demonstrated its ability to make that trip by sending its employees to Colorado to conduct the due diligence review for the MOU. Appellant App. at 103.
In addition, even though Canadian and United States law are not completely congruent, both are “rooted in the same common law traditions.” Aristech Chem., 138 F.3d at 629. That comnianality is especially acute in this case. Here, Benton’s primary claim is that Cameco breached the *1084 implied duty of good faith and fair dealing. This duty of good faith is similar in both United States and Canadian law. See David Stack, The Two Standards of Good Faith in Canadian Contract Law, 62 Sask. L.Rev. 201, 202-03 (1999) (commenting that in Canadian contract law, the doctrine of good faith has been described and applied in similar fashions as in United States law). Moreover, any differences may be easily discovered and dealt with as Canadian law is readily available electronically on both Westlaw and LexisNexis. Thus, “The unfairness of forcing a foreign party to litigate in an unfamiliar legal system is alleviated here by the fact that the Canadian legal system is similar in many respects to the legal system in the United States.” Ensign-Bickford Co. v. ICI Explosives USA, Inc., 817 F.Supp. 1018, 1031 (D.Conn.1993); see also Southern Sys., Inc. v. Torrid Oven Ltd., 58 F.Supp.2d 843, 852 (W.D.Tenn.1999).
In addition, Cameco cannot credibly claim that forcing it to travel and litigate within the United States is akin to forcing it to retrieve three golden apples of the Hesperides. In addition to owning a subsidiary based in Nevada, Appellant App. at 75, Cameco operates major uranium mines in both Wyoming and Nebraska, Cameco 2003 Annual Report 18 (2003), available at http://www.cameco.com/investor_relations/ annual/2003/common/pdfs/2003_ar_full-72dpi.pdf. Thus, Cameco employees regularly operate in and travel to the United States to conduct economic activity. Accordingly, I am satisfied that forcing Ca-meco to litigate this dispute in Colorado is not “gravely difficult and inconvenient.” Burger King, 471 U.S. at 477, 105 S.Ct. 2174.
ii

The Forum’s interest

Another factor to be considered in determining whether the exercise of personal jurisdiction is reasonable in this case is Colorado’s interest in providing a forum. The majority concedes that Colorado has an interest but concludes that this interest is attenuated by the fact Canadian rather the Colorado law applies. I disagree.
“States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors.” OMI, 149 F.3d at 1092. This interest is separate from and in addition to the interest a state may have “where resolution of the dispute requires a general application of the forum state’s law.” Id.; See Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (discussing the interest of various states to effectuate its “substantive policy” separate from the interest of the forum state in providing a forum for its own resident). Thus, the fact that the plaintiff is a resident of the forum state supports the finding that the exercise of personal jurisdiction is reasonable irrespective of what state’s law may apply.
In this case, Benton is a resident of the forum state. In addition, he alleges that the injuries inflicted upon him by Cameco exceed 100 million dollars. Thus, Colorado has an “important interest” in providing a forum in which Benton can seek redress.
That Benton is a resident of the forum state also distinguishes the instant case from OMI holdings, a case heavily relied upon by the majority. In OMI, none of the parties were residents of the forum state and we noted specifically that no party was claiming the defendants “committed a tortious act against or breached a contract with a [forum] resident.” 149 F.3d at 1096. Were this otherwise, we observed that the forum’s “interest in litigating the suit would undoubtedly be much higher.” Id.
*1085 The importance that the plaintiff be a resident of the forum state was also emphasized in Asahi There, both parties to the litigation were not only alien to the forum state, but alien to the country as well. Asahi 480 U.S. at 114, 107 S.Ct. 1026. Based upon that fact, Justice O’Connor’s plurality portion of the opinion noted that “[b]ecause the plaintiff is not a [forum state] resident, [the forum state’s] legitimate interest in the dispute have considerably diminished.” Id. This case does not involve a non-forum plaintiff as Came-co is alleged to have both breached a contract with and committed a tortious act against a forum resident. Appellant App. at 13-14.
iii

The Interstate Judicial System’s Interest in Obtaining Efficient Resolution

This factor in the reasonableness inquiry is “whether the forum state is the most efficient place to litigate the dispute.” OMI, 149 F.3d at 1097. Factors to be considered in determining efficiency include the location of witnesses, the situs of the injury, the controlling law, and the prevention of piecemeal litigation. Based upon these factors, the majority was convinced Canada would clearly be the more efficient venue. I do not believe the case to be so clear.
While several factors do not favor Colorado as a forum, the location of potential witnesses is ambiguous. Cameco asserts that the majority of the employees involved in the MOU reside in Canada. However, Cameco also admits that some live in Minnesota. Moreover, Benton asserts that there are “approximately one dozen potential witnesses with pertinent relevant knowledge that reside in Colorado.” Appellant App. at 103. Thus, no matter which forum is selected, Colorado or Canada, a substantial number of witnesses may need to travel. And, given the demonstrated ability of Cameco employees to travel to and from the United States, I do not believe Colorado is materially more inefficient than Canada.
C

Conclusion

Given the substantial and deliberate contacts Cameco engaged in with the State of Colorado through one of its residents and the less than compelling case of unfairness by litigating there, I conclude that due process is not offended by the exercise of personal jurisdiction over Cameco in this case. Accordingly, I respectfully dissent from the holding that litigation in Colorado would violate traditional notions of fair play and substantial justice.

. The MOU was dated November 1, 1994, and executed for Cameco by Gerald Grandy, then Vice President of Finances and Business Development and Oren L. Benton. Appellant App. at 134.

. Since corporations are legal fictions, a corporation's contacts with a forum state are created through the acts of its employees and agents. International Shoe Co. v. Washington, 326 U.S. 310, 316-17, 66 S.Ct. 154, 90 L.Ed. 95 (1945).