Billy CUPP and Cathy R. Craig d/b/a Looks Salon, Plaintiffs,

v.

ALBERTO–CULVER USA, INC., Sally Beauty Company, Inc., Beauty Systems Group, Inc., L'Oréal, S.A., L'Oréal USA, Inc., Redken 5th Avenue N.Y.C. LLC, and John Paul Mitchell Systems, Defendants.

No. 03–2592–DV.

United States District Court,
W.D. Tennessee,
Western Division.

March 16, 2004.

Billy J. Cupp, pro se, Cordova, TN, for plaintiff.

Cathy R. Craig, pro se, Cordova, TN, for plaintiff.

James H. Stock, Jr., Weintraub Stock & Grisham, Memphis, TN, Melvin A. Schwarz, Washington, DC, J. Brook Lathram, W.J. Michael Cody, Douglas F.

Halijan, Burch Porter & Johnson, Ronald M. Harkavy, Henry C. Shelton, III, Armstrong Allen, PLLC, Memphis, TN, for defendants.

Diane K. Vescovo, Office of Magistrate Judge, Memphis, TN, pro se.

## ORDER GRANTING MOTION TO DISMISS OF DEFENDANT L'ORÉAL S.A.

DONALD, District Judge.

Before the Court is the motion of L'Oréal S.A. ("Defendant") to dismiss the complaint of Billy Cupp ("Cupp") and Cathy R. Craig ("Craig") d/b/a/ Looks Salon ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6). The Court finds that Plaintiff failed to show personal jurisdiction over Defendant and grants Defendant's motion to dismiss.

## I. Factual Background[1]

L'Oréal S.A. is a French corporation, with its registered office in Paris, France and its corporate headquarters and principal offices in Clichy, France. Its principal business is the manufacture and sale of cosmetics, including but not limited to hair care products, skin care products, and fragrances. L'Oréal USA, Inc. ("L'Oréal USA"), also a defendant in this case, is a wholly-owned subsidiary of L'Oréal S.A. Redken 5th Avenue N.Y.C. LLC ("Redken"), also a defendant in this case, is a wholly-owned subsidiary of L'Oréal USA.

L'Oréal S.A. has never been a resident corporation of any state in the United States. It does not now, nor did it during the time period relevant to this case, maintain an office, manufacturing plant, or other facility in the United States. It does not now, nor did it during the relevant time, maintain a bank account in the Unit-

ed States, nor own, lease, or rent any real or personal property in the United States. L'Oréal S.A. does not now, nor did it then, owe or pay any American taxes, franchise fees, or other similar fees, nor maintain inventory in the United States. Shares of L'Oréal S.A. are traded only on the Paris Stock Exchange; they are not publicly traded in the United States. Defendant did not hold any meeting of its board of directors or shareholders anywhere in the United States during the relevant time period. L'Oréal S.A. does not market or sell in the United States any of the Redken products at issue here. L'Oréal S.A. has not had direct business dealings of any sort with Plaintiff.

Plaintiff is a full-service hair salon for men and women located in Cordova, Tennessee. Plaintiff offers styling services and hair care products for clients and customers.

From April 2000 until September 2002, Plaintiff bought "exclusive salon hair care products," which it defines as hair care products sold exclusively through salons under the advice of professional hair stylists, from two local distributors located in Memphis, Tennessee. Plaintiff obtained Paul Mitchell products from Heil Beauty Systems ("Heil"). Plaintiff obtained Redken products from Arnold's, Inc. ("Arnold's"). Another local distributor, State Beauty Supply, also carried Redken products but would not sell Plaintiff the products needed to support Plaintiff's retail market.

In 1999, Beauty Systems Group ("BSG") acquired Heil. BSG also acquired Arnold's in September 2002. Sally Beauty Company, Inc. ("SBC"), a subsidiary of Alberto–Culver USA, Inc. ("Alberto–Culver"), owns BSG.

---

1. The Court takes the facts from Plaintiff's complaint and the materials submitted on this motion to dismiss.

In April 2003, BSG, without warning or notice, stopped all Plaintiff's product orders and would not restart them unless and until Cupp and Craig signed an agreement regarding distribution of products sold to Plaintiff by BSG ("Agreement"). The Agreement contained no reference to L'Oréal S.A. It did refer to an unidentified "L'Oreal Professional" as one of the manufacturers of a salon product available for purchase from BSG. L'Oreal Professional and the other manufacturers are third party beneficiaries of the Agreement, with independent rights to enforce the Agreement. Plaintiff refused to sign the Agreement and therefore was unable to obtain hair care products through BSG. Plaintiff sustained severe economic losses as a result. Plaintiff wrote several letters to manufacturers and distributors expressing its concern over the situation, but BSG refused to proceed with sales to Plaintiff without the Agreement.

## II. Procedural Background

Plaintiff filed this complaint pro se on August 12, 2003 against L'Oréal S.A.; L'Oréal USA; Redken; BSG; SBC; Alberto–Culver; and John Paul Mitchell Systems ("JPM").[2] Plaintiff alleges that (1) BSG's acquisition of Arnold's created an illegal vertical merger under § 7 of the Clayton Act, 15 U.S.C. § 18 (2004); (2) BSG's distribution of the Redken product line, through its acquisition of Arnold's, created an illegal horizontal merger under § 7 of the Clayton Act; (3) BSG's requirement of the product agreement constituted unlawful restraint of trade under § 1 of the Sherman Act, 15 U.S.C. § 1 (2004); (4) BSG's requirement of the product agreement constituted monopolization under § 2 of the Sherman Act, 15 U.S.C. § 2 (2004); and (5) the product agreement is evidence of express collusion in violation of § 1 of the Sherman Act.

On December 19, 2003, Defendant filed this motion to dismiss. Defendant argues that (1) it did not maintain the minimum contacts with the United States necessary to subject it to either general or specific personal jurisdiction in this Court, (2) Plaintiff's complaint fails to state a claim on which relief may be granted, and (3) Plaintiff did not serve Defendant in compliance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention").

On January 23, 2004, Plaintiff filed a response to all four of the motions to dismiss, in which it referred to the arguments in its previously filed motion for summary judgment. Plaintiff based its only argument regarding jurisdiction over Defendant on the interrelationship among the various corporate defendants in this case.

On February 9, 2004, Defendant, in conjunction with L'Oréal USA and Redken, submitted a reply brief, reasserting its position and requesting that the Court deny Plaintiff's summary judgment motion.

## III. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of a claim for lack of jurisdiction over the person. The plaintiff bears the burden of establishing jurisdiction. *See Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). Absent an evidentiary hearing on the issue of personal jurisdiction, the plaintiff "need only make a prima facie showing of jurisdiction." *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir.2002) (quoting *Neogen Corp.*

---

**2.** Redken and L'Oréal USA filed their own motion to dismiss on December 19, 2003. Alberto–Culver, SBC, and BSG filed a separate motion to dismiss on the same date. JPM filed a motion to dismiss on November 20, 2003.

*v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir.2002)). A prima facie showing of jurisdiction may be established based upon the plaintiff's presentation of specific facts, by affidavit or otherwise. *Theunissen,* 935 F.2d at 1458. Presented with a properly supported motion to dismiss, the court has three procedural alternatives: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Id.* In considering a motion to dismiss, "the court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." *Bird,* 289 F.3d at 871. This requirement, however, does not require the court "to ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiffs." *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 153 (6th Cir.1997).

■ Where a federal court's subject matter jurisdiction depends on the existence of a federal question, personal jurisdiction over the defendant generally exists if the defendant is amenable to service of process under the forum state's long-arm statute, and if the exercise of personal jurisdiction would not deny the defendant due process. *Bird,* 289 F.3d at 871; *Reynolds v. Int'l Amateur Athletic Fed'n,* 23 F.3d 1110, 1115 (6th Cir.1994). In Tennessee, the long-arm statute extends the personal jurisdiction of Tennessee courts to the limits of the Due Process Clause. *See* Tenn.Code Ann. § 20–2–214(a)(6) (2004). Therefore, the Court need only determine whether the assertion of personal jurisdiction over Defendants would violate the Due Process Clause.

■ Consistent with the Due Process Clause, a court may exercise personal jurisdiction over a defendant so long as that defendant has "certain minimum contacts" with the forum such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). When the court considers jurisdiction pursuant to a federal statute that provides for nationwide service of process, as does the Clayton Act, *see* 15 U.S.C. § 22 (2004), the relevant forum to assess the defendant's contacts is the United States as a whole. *See In re Auto. Refinishing Paint Antitrust Litig.,* 358 F.3d 288, 298–99 (3d Cir.2004) (personal jurisdiction in federal antitrust litigation is assessed on the basis of the defendant's aggregate contacts with the United States as a whole); *United Liberty Life Ins. v. Ryan,* 985 F.2d 1320, 1331 (6th Cir.1993) (under nationwide service of process provision in Securities Exchange Act, court assesses defendant's contacts with United States); *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1239 (noting in dicta in federal antitrust case that, for personal jurisdiction, court would assess defendant's contacts with United States as a whole).

■ Personal jurisdiction may be either general or specific, depending on the nature of the defendant's contacts with the forum. *Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 981 (6th Cir.1992). General jurisdiction arises when a defendant's contacts with the forum are of such a "continuous and systematic nature" that the court may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the forum. *Third Nat'l Bank v. WEDGE Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir.1989).

■ Specific jurisdiction arises when the defendant has sufficient minimum contacts that arise from or are related to the cause of action. The plaintiff must establish that (1) the defendant purposefully availed himself of the privilege

of acting in the forum or intentionally caused a consequence in the forum, (2) the cause of action arose from the defendant's activities in the forum, and (3) the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum to make the exercise of jurisdiction reasonable. *See Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir.1998); *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968). In applying these elements, the contacts of each defendant must be assessed individually. *See Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). Purposeful availment is the most important criterion. *See Kerry*, 106 F.3d at 150. The significance of purposeful availment is that it "allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

▮ Plaintiff did not meet its burden of showing that L'Oréal S.A. maintained the continuous and systematic contacts with the United States necessary for general personal jurisdiction in this Court. The affidavit submitted by Defendant's general counsel demonstrates clearly that L'Oréal S.A. never: maintained offices, facilities, or plants in the United States; paid taxes here; had shareholders or board of directors meetings here; owned or leased personal or real property here; or maintained inventory or a bank account here either now or during the time in which the complained of actions occurred. General personal jurisdiction is simply un-

available on these facts. *See Chrysler*, 643 F.2d at 1239 (finding no personal jurisdiction over Spanish corporation in antitrust case when corporation never qualified to do business in United States, maintained office or warehouse or owned or leased any real or personal property in United States, sold any of its products in or for distribution in United States, hired any employees or representatives in United States, or borrowed money in United States, and only contacts were purchase of American parts for some products and use of technology originating in United States).

▮ Also, Plaintiff did not submit any evidence showing purposeful availment by L'Oréal S.A., as is necessary for specific personal jurisdiction. Plaintiff's only argument for jurisdiction appears to be the interrelationship of L'Oréal S.A. with the other corporate defendants, in that it is the parent company of L'Oréal USA, which is the parent of Redken. Assuming arguendo that this Court could maintain personal jurisdiction over either L'Oréal USA or Redken, corporate relationships may be a factor in assessing forum contacts, but a company does not purposefully avail itself of the forum merely by owning some or all of a corporation subject to jurisdiction in the forum. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273–74 (6th Cir. 1998). Personal jurisdiction must be based on something that the defendant itself has done involving the forum, or on evidence that the presumed corporate separation between parent and subsidiary is a fiction, such as when the parent exercises actual control over the subsidiary, or the parent holds the subsidiary out as its agent in the forum. *See id.* at 1274–75. For example, in *Third Nat'l Bank in Nashville v. WEDGE Group Inc.*, the Sixth Circuit found personal jurisdiction over the parent corporation where the parent owned 100% of a subsidiary that con-

ducted business in the forum state, the parent's officers served as the subsidiary's directors and met regularly in the forum state, the parent shared income tax liability with the subsidiary and the subsidiary's subsidiaries, and the parent's officers participated in negotiations of loan agreements between the subsidiary and the plaintiff. That situation is entirely distinguishable from the present facts, in which L'Oréal S.A. has American subsidiaries, but the evidence shows no control or connections other than ownership between the parent and the subsidiaries. *See WEDGE*, 882 F.2d at 1090. Corporate ownership alone is insufficient for the exercise of personal jurisdiction.[3]

The Court therefore finds that Plaintiff did not meet its burden of demonstrating even a prima facie showing of facts on which the Court could exercise personal jurisdiction over Defendant L'Oréal S.A. Accordingly, the Court grants Defendant's motion to dismiss as to L'Oréal S.A. only.

## IV. Service of Process

Even if the Court found personal jurisdiction to exist, it is questionable whether Plaintiff served Defendant properly by sending a copy of the summons and complaint to L'Oréal S.A.'s office in Paris, France, to the attention of "Legal Dept./ Agent for Service of Process," by registered United States mail. (*See* Mem. of Law in Supp. of Mot. of Def. L'Oréal S.A. to Dismiss Compl. Pursuant to Rules 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure, Ex. A.)

This Court directed Plaintiff to serve L'Oréal S.A. in accordance with Federal Rule of Civil Procedure 4(h)(2), which directs that service be made on a corporation outside the United States in any manner prescribed for the service of individuals in foreign countries by Rule 4(f), except personal delivery. Fed.R.Civ.P. 4(h)(2). Rule 4(f), in turn, provides that service upon a defendant that has not waived service "may be effected in a place not within any judicial district of the United States: (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention ..." Fed. R.Civ.P. 4(f).

▇▇▇ Both the United States and France ratified the Hague Convention. Application of the Hague Convention is mandatory in all cases that come within its scope, which are those cases where there is "occasion to transmit a judicial or extrajudicial document for service abroad." *See* Hague Convention, Art. 1; *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988). "If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies." *Volkswagenwerk*, 486 U.S. at 700, 108 S.Ct. 2104.

Tennessee law allows service on a nonresident defendant by registered United States mail, if the plaintiff sends the sum-

---

**3.** Even if Plaintiff had shown purposeful availment, it is not clear that Plaintiff's cause of action arose from any activities of L'Oréal S.A. in the United States, to the extent that Plaintiff's allegations stem from the Agreement presented to it by BSG. The Agreement refers to neither L'Oréal S.A., L'Oréal USA, nor Redken by name. No evidence shows that L'Oréal S.A. had any direct contacts with BSG or with Plaintiff. The only connection that Plaintiff has shown between L'Oréal S.A. and either BSG or Plaintiff is that L'Oréal S.A. owned the subsidiary L'Oréal USA, which in turn owned the subsidiary Redken, the products of which BSG began to distribute when it bought an independent local distributor in September 2002. This is too attenuated a connection to say that Plaintiff's cause of action arose from any actions of L'Oréal S.A. in the United States.

mons and a certified copy to the secretary of state, who then mails the certified copy to the defendant. Service on the defendant is not consummate until a return receipt is received by the secretary of state. Tenn.Code Ann. §§ 20–2–215, 20–2–216 (2004). Since mailing a copy to L'Oréal S.A. in France involves transmitting documents abroad, the Hague Convention applies.

The Hague Convention sets forth specific procedures for service of process abroad, which do not include sending the documents directly to the defendant by United States mail. *See* Hague Convention, Art. 2–6, 8, 19. Plaintiff clearly did not comply with those detailed requirements.

Article 10 of the Hague Convention states, however, that, "Provided the State of destination does not object, the present Convention shall not interfere with (a) the freedom to send judicial documents, by postal channels, directly to persons abroad ..." Hague Convention, Art. 10. There is a split of authority among the federal courts as to whether Article 10(a) allows service of process abroad by regular mail or allows only the sending of judicial documents other than service of process abroad by regular mail. *Compare Ackermann v. Levine,* 788 F.2d 830, 839–40 (2d Cir.1986) (finding that service of process by registered mail did not violate the Hague Convention), *with Bankston v. Toyota Motor Co.,* 889 F.2d 172, 174 (8th Cir.1989) (sending copy of summons and complaint to defendant abroad by registered mail does not comply with Hague Convention); *see also Quinn v. Keinicke,* 700 A.2d 147, 157 n. 14–15 (Del.Super.Ct.1996) (listing cases on each side).

The Sixth Circuit has yet to address this issue. Of the district courts within the Sixth Circuit that addressed it, however, both held that service on the defendant by registered mail did not comply with the Hague Convention. *See Uppendahl v. Amer. Honda Motor Co., Inc.,* 291 F.Supp.2d 531, 534 (W.D.Ky.2003); *Wilson v. Honda Motor Co.,* 776 F.Supp. 339, 341–42 (E.D.Tenn.1991). The Court finds the reasoning in those cases persuasive and, were the issue squarely presented, would likely hold that service of process by registered United States mail does not comply with the Hague Convention. The appropriate remedy for that situation would be a stay in which Plaintiff could properly effect service. *See, e.g., In re Hayes Lemmerz Int'l, Inc.,* 271 F.Supp.2d 1007, 1033 (E.D.Mich.2003) (quashing service ineffective under Hague Convention and retaining case while plaintiffs complied with Hague Convention) (citing *Stern v. Beer,* 200 F.2d 794, 795 (6th Cir.1952)). Having already found that it may not exercise personal jurisdiction over Defendant L'Oréal S.A., however, the Court declines to resolve the service of process issue here.[4]

## V. Conclusion

Plaintiff failed to meet its burden of showing either general or specific personal jurisdiction in this Court over Defendant L'Oréal S.A. Accordingly, the Court **GRANTS** the motion to dismiss as to L'Oréal S.A. only.

---

4. The Court also need not address Defendant's arguments under Rule 12(b)(6), as it is without jurisdiction over L'Oréal S.A.