AMERICAN COPPER & BRASS, INC.,
and The Bankrupt Estate of Smith
and Wofford Plumbing and Industrial
Supply, Inc., on behalf of themselves
and all others similarly situated,
Plaintiffs,

v.

MUELLER EUROPE, LTD.,
et al., Defendants.

No. 04–2771 DV.

United States District Court,
W.D. Tennessee,
Western Division.

Sept. 13, 2006.

B.J. Wade, Glassman Edwards Wade & Wyatt, P.C., Memphis, TN, Jason T. Baker, Ryan M. Hagan, William M. Audet, Alexander Hawes & Audet, LLP, San Jose, CA, Mary Jane Fait, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL, Paul Kent Bramlett, Bramlett Law Offices, Nashville, TN, Richard N. Laflamme, Laflamme & Mauldin, P.C., Jackson, MI, for Plaintiffs.

Candy M. Lawson, Paul W. Bartel, II, Davis Polk & Wardwell, David E. Mollon, Winston & Strawn, LLP, Alexandra H. Russello, Kelly M. Hnatt, Sameer Nitanand Advani, Scott S. Rose, William H. Rooney, Willkie Farr & Gallagher LLP, Susanne M. Kandel, Aidan Synnott, Danielle M. Aguirre, Moses Silverman, Seema Tendolkar, Paul Weiss Rifkind Wharton & Garrison LLP, New York City, David R. Esquivel, Joshua Ray Denton, Robert Dale Grimes, Bass Berry & Sims PLC, Colin J. Carnahan, Paul A. Alexis, Boult Cummings Conners & Berry, Nashville, TN, Jerome A. Broadhurst, Apperson, Crump & Maxwell, PLC, Van Davis Turner, Jr., Evans & Petree, P.A., J. Brook Lathram, Burch Porter & Johnson, Robert L. Crawford, Wyatt Tarrant & Combs, James R. Newsom, III, Harris Shelton Hanover Walsh, PLLC., Memphis, TN, Marc S. Palay, Winston & Strawn LLP, Geneva, Mark S. Olson, Ranelle A. Leier, Oppenheimer Wolff & Donnelly, Minneapolis, MN, Robert J. Fluskey, Daniel C. Oliverio, Kevin M. Kearney, Hodgson Russ LLP, Buffalo, NY, David I. Gelfand, Matthew I. Bachrack, Cleary Gottlieb Steen & Hamilton LLP, Washington, DC, for Defendants.

## ORDER GRANTING DEFENDANT MUELLER EUROPE'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

DONALD, District Judge.

Before this Court is the motion (D.E.# 115) of Defendant Mueller Europe Ltd. ("Mueller Europe") to dismiss the class action complaint of American Copper & Brass, Inc. and The Bankrupt Estate of Smith and Wofford Plumbing and Industrial Supply, Inc. (collectively "Plaintiffs"). The complaint was filed by Plaintiffs with this Court against twenty-three defendants (six located in the United States, sixteen located throughout Europe), alleging a global price-fixing conspiracy which resulted in Plaintiffs' paying artificially high prices for copper tubing in the United States. Defendant's motion to dismiss was brought for lack of personal jurisdiction pursuant to Fed. R. Civ. Proc. 12(b)(2); or alternatively, for failure to state a claim pursuant to Fed. R. Civ. Proc. 12(b)(6); or alternatively, as time-barred by the relevant statute of limitations. Upon review of the facts, relevant statutory and case law, and for the reasons stated herein, the

Court grants the motion to dismiss the complaint as to moving Defendant for lack of personal jurisdiction.

## I. BACKGROUND

Plaintiff American Copper is a Michigan corporation. (Compl.¶ 8.) Plaintiff Smith and Wofford Estate is an entity located in the State of Tennessee. *Id.* at ¶ 9. Defendant Mueller Europe is a limited liability company organized under the laws of the United Kingdom with its principal place of business in West Midlands, Great Britain. *Id.* at ¶ 23. Mueller Europe is a wholly-owned subsidiary of Defendant Mueller Industries, Inc., a U.S. corporation with its principal place of business in Memphis, Tennessee. *Id.* On July 6, 2005, this Court denied, *inter alia,* the motion of Mueller Industries to dismiss for failure to state a claim.

On September 24, 2004, Plaintiffs filed a class action complaint with this Court alleging violations by the twenty-three defendants of Section 1 of the Sherman Act. On March 9, 2005, Plaintiffs filed a Consolidated Amended Class Action Complaint ("the complaint"). Plaintiffs allege that between June 1, 1988 and March 31, 2001, Mueller Europe, as well as the other named defendants, "directly or through its subsidiaries and/or affiliates, produced Copper Tubing and sold it throughout the United States." *Id.* at ¶¶ 23, 43. Defendant categorically denies this allegation, and asserts that the company has never had contact of any kind with the United States or its copper tubing market. (Mem. Law Supp. Mueller Europe Ltd.'s Mot. Dismiss Cons.Am. Class Action Compl. 3).

Plaintiffs rely to a great extent on a September 3, 2004 European Commission ("EC") press release for their facts. This press release detailed the EC's investigation of a European cartel, which had fixed prices of copper tubing between June, 1988, and March, 2001 "throughout most of the European Economic Area . . . in violation of EU Treaty 81 and EEA Agreement Article 53." (Compl.¶ 53.) According to the press release, the investigation had culminated in the imposition of fines against a number of European copper tubing manufacturers, including the moving Defendant, Mueller Europe. *Id.*

Echoing the text of the press release, Plaintiffs aver that a group of the largest European producers of copper plumbing tubing joined together to form a cartel with the purpose of fixing prices of copper tubing in the "high price level countries." *Id.* at ¶ 56. Plaintiffs further aver that in various meetings, the defendants sought to "monitor implementation of the illegal arrangements by exchanging information on sales, orders, market shares and pricing."[1] *Id.* Plaintiffs only depart from the press release text in their claim that the geographic scope of the cartel was global rather than regional, and included the United States as a target for the price-fixing scheme.

On June 28, 2005, Defendant Mueller Europe filed the present motion, seeking dismissal of Plaintiffs' complaint on three grounds: lack of personal jurisdiction, failure to state a cognizable claim, and the statute of limitations time bar.

## II. PERSONAL JURISDICTION

For a court to adjudicate a legal dispute, it must possess jurisdiction over the defendant(s). *Days Inns Worldwide, Inc. v. Patel,* 445 F.3d 899, 903 (6th Cir. 2006). The plaintiff bears the burden of establishing this personal jurisdiction. *Theunissen v. Matthews,* 935 F.2d 1454,

---

**1.** This language in the complaint is taken directly from the EC press release.

1458 (6th Cir.1991); *Serras v. First Tenn. Bank Nat.'l Assoc.*, 875 F.2d 1212, 1214 (6th Cir.1989). Under Federal Rule of Civil Procedure 12(b)(2), the defendant may challenge the court's jurisdiction for "lack of jurisdiction over the person" by a motion for dismissal. In face of such a motion supported by affidavits, a plaintiff must establish a prima facie showing of jurisdiction by responding with affidavits and, if useful, other written evidence, and may not stand on the pleadings alone. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936) ("If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, [plaintiff] must support them by competent proof."); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir.1999) ("[P]laintiff bears the burden of proving by affidavit the basis upon which jurisdiction may be obtained ... if the defendant challenging jurisdiction files affidavits in support of his position."); *Theunissen*, 935 F.2d at 1458 ("[P]laintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.").

■■■ Presented with such a motion to dismiss, the court has three procedural alternatives: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen*, 935 F.2d at 1458. When the trial court has determined that the motion to dismiss can be decided upon the written submissions, the court must consider the pleadings and affidavits submitted in a light most favorable to the plaintiff. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002); *Theunissen*, 935 F.2d at 1459; *Serras*, 875 F.2d at 1214. The court does not weigh the controverting assertions of the party seeking dismissal. *Theunissen*, 935 F.2d at 1459; *Serras*, 875 F.2d at 1214. The purpose of this rule is "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Theunissen*, 935 F.2d at 1459; *Serras*, 875 F.2d at 1214. The rule, however, does not require the court "to ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiffs." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir.1997), nor should the court credit "conclusory allegations or draw farfetched inferences." *Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir.1998).

■■■ When a federal court's subject matter jurisdiction depends on the existence of a federal question, personal jurisdiction over the defendant generally exists if the defendant is amenable to service of process under the forum state's long-arm statute, and if the exercise of personal jurisdiction would not deny the defendant due process. *Bird*, 289 F.3d at 871; *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.1994). In Tennessee, the long-arm statute extends the personal jurisdiction of Tennessee courts to the limits of the Due Process Clause. *See* Tenn.Code Ann. § 20–2–214(a)(6) (2004). Therefore, the Court need only determine whether the assertion of personal jurisdiction over Defendants would violate the Due Process Clause.

■■■ Consistent with the Due Process Clause, a court may exercise personal jurisdiction over a defendant so long as that defendant has "certain minimum contacts" with the forum such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct.

154, 90 L.Ed. 95 (1945). When the court considers jurisdiction pursuant to a federal statute that provides for nationwide service of process, as do the anti-trust laws, *see* 15 U.S.C. § 22 (2000), the relevant forum to assess the defendant's contacts is the United States as a whole. *See In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 298–99 (3d Cir.2004) (personal jurisdiction in federal antitrust litigation is assessed on the basis of the defendant's aggregate contacts with the United States as a whole); *United Liberty Life Ins. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir.1993) (under nationwide service of process provision in Securities Exchange Act, court assesses defendant's contacts with United States); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1238–39 (6th Cir.1981) (in federal antitrust case, court assesses defendant's contacts with United States as a whole).

 Personal jurisdiction may be either general or specific, depending on the nature of the defendant's contacts with the forum. *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir.1992). General jurisdiction arises when a defendant's contacts with the forum are of such a "continuous and systematic nature" that the court may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the forum. *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir.1989).

 Specific jurisdiction arises when the defendant has sufficient minimum contacts that arise from or are related to the cause of action. The plaintiff must establish that (1) the defendant purposefully availed himself of the privilege of acting in the forum or intentionally caused a consequence in the forum; (2) the cause of action arose from the defendant's activities in the forum; and (3) the

acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum to make the exercise of jurisdiction reasonable. *See Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir.1998); *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968). In applying these elements, the contacts of each defendant must be assessed individually. *See Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *Days Inns*, 445 F.3d at 904.

 Purposeful availment is the most important of the three criteria. *See Kerry Steel*, 106 F.3d at 150. The significance of purposeful availment is that it "allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Although purposeful availment requires intentional action by the defendant, it does not require the defendant's actual presence in the forum. It can be satisfied instead by the defendant's action "expressly aimed" at the forum and causing a harmful effect there from afar. *Calder v. Jones*, 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). This is often referred to as the "Calder-effects" test.

 While the relationships among the parties may be of significance in evaluating their ties to the forum, the minimum requirements of *Int'l Shoe* must nevertheless be met as to each defendant over

whom a court claims jurisdiction. *Rush,* 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516. As this court stated in *Cupp v. Alberto–Culver USA, Inc.,* although "corporate relationships may be a factor in assessing forum contacts, . . . a company does not purposefully avail itself of the forum merely by owning some or all of a corporation subject to jurisdiction in the forum." (citation omitted). "Personal jurisdiction must be based on something that the defendant itself has done involving the forum . . . Corporate ownership alone is insufficient for the exercise of personal jurisdiction." 308 F.Supp.2d 873, 878–79 (W.D.Tenn.2004).

## III. ANALYSIS

Defendant's motion is based primarily upon the assertion that Mueller Europe has never had any contact with the United States (Mem. Law Supp. Mueller Europe Ltd.'s Mot. Dismiss Cons.Am. Class Action Compl. 4, 6–7). Specifically, Defendant asserts that it has never sold, distributed, or sold for distribution any products into the U.S.; has never been incorporated or registered to do business in any state in the U.S.; has never maintained any offices, facilities, or plants in the U.S.; has never owned any assets that are located in the U.S.; has never owned, used, or possessed any personal or real property in the U.S.; has never maintained a bank account in the U.S.; has never paid any taxes or franchise fees in the U.S.; and does not have any employees who reside in the U.S. *Id.*

Plaintiffs have not disputed any of Defendant's assertions as to a lack of direct contact with the U.S. market. However, Plaintiffs argue that even in the absence of direct contact with the forum, Defendant has sufficient indirect contact with the U.S. to make specific personal jurisdiction over Defendant proper. (Pls.' Mem. Law Opp'n

Defs.' Mots. Dismiss Compl. 17.) Plaintiffs base their jurisdictional assertion on two separate legal theories.

### A. The "Calder Effects" Test

First, Plaintiffs cite *Calder v. Jones,* 465 U.S. 783, 790–91, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) for the proposition that the minimum contacts test may be satisfied when the defendant's actions outside the U.S. had an intended injurious effect in the U.S. (Pls.' Mem. Law Opp'n Defs.' Mots. Dismiss Compl. 17.) Plaintiffs also cite a number of decisions from other circuits which have applied the "*Calder* effects" test to find personal jurisdiction over foreign antitrust defendants when the defendant intentionally participated in an international conspiracy that directed its wrongful activity at the United States. *Id.* at 17–18.

While Plaintiffs' citations amply demonstrate that *Calder* sometimes applies in the context of anti-trust litigation and in some cases involving alleged foreign conspirators, they fail to establish *Calder's* applicability to the Defendant in this case. Plaintiffs offer no specific facts in support of their conclusory statements that Defendant's parent company committed overt acts in furtherance of price-fixing within the state Tennessee and that these acts are attributable to moving Defendants for jurisdictional purposes. *See id.* at 9. Plaintiffs' only allegation naming Defendant Mueller Europe specifically is the unsubstantiated statement that the company "directly or through its subsidiaries and/or affiliates, produced Copper Tubing and sold it throughout the United States." (Compl. ¶ 23.)

In the face of Defendant's affidavits denying any contact with the U.S. or involvement in any conspiracy affecting the U.S., Plaintiffs offer no meaningful substantiation of their conspiracy and

price fixing claims, which were unabashedly borrowed from the EC press release. Plaintiffs' acknowledge this Court's finding in *Cupp* that corporate ownership alone is insufficient for the exercise of personal jurisdiction. The reasoning of *Cupp* should apply even more forcefully in the present case where the non-resident company in question is not the owner but is *owned* by a corporation subject to jurisdiction in the forum. Only if a foreign subsidiary has acted through its U.S. parent, or was utilized by the parent in such a way as to establish "sufficient minimum contacts" is the parent-subsidiary relationship of any relevance in evaluating jurisdiction over the subsidiary. Yet the only tangible connection between Defendant and the U.S. proffered is the fact that Defendant's parent company "is the leading global manufacturer of copper tubing." (Pls.' Mem. Law Opp'n Defs.' Mots. Dismiss Compl. 20.) Plaintiffs' collection of irrelevant facts, conclusory statements, and bald allegations falls well short of a showing that Mueller Europe "expressly aimed" its conduct at the forum, causing injury to Plaintiffs, as required under *Calder.*

### B. Conspiracy Theory

Plaintiffs' second approach to establishing personal jurisdiction is the so-called "conspiracy theory," which they note has been found by the Tennessee courts as satisfying the due process requirement embodied in the Tennessee long-arm statute.[2] Under the theory, "an out-of-state defendant involved in a conspiracy who lacks sufficient minimum contacts with the forum state may nevertheless be subject to jurisdiction because of a co-conspirator's contacts with the forum." *Chenault v. Walker,* 36 S.W.3d 45, 51 (Tenn.2001). This approach to personal jurisdiction is grounded in agency and conspiracy law, and is based on the premise that "[i]f through one of its members a conspiracy inflicts an actionable wrong in one jurisdiction, the other members should not be allowed to escape being sued there by hiding in another jurisdiction." *Id.* at 54–55 (Tenn.2001) (citation omitted).

While it has been embraced by a number of courts, *see Perry v. Kempton,* 864 F.Supp. 37, 39 n. 2 (S.D.Ohio 1994), neither the Supreme Court nor the Sixth Circuit has ruled directly on the merits of the conspiracy theory approach. Where the Circuit's district courts have confronted the approach, it has often been with disfavor. *See Hollar v. Philip Morris, Inc.,* 43 F.Supp.2d 794, 802 n. 7 (N.D.Ohio 1998) ("Since personal jurisdiction must be based on the actions and contacts of the specific defendant at issue, ... the Court declines to apply the so called 'conspiracy theory of jurisdiction'."); *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris, Inc.,* 23 F.Supp.2d 796, 808 (N.D.Ohio 1998) ("[U]nilateral activity of another party or a third person is not an appropriate consideration when determining [jurisdiction]."). *But see Kentucky Speedway, LLC v. National Assoc. of Stock Car Auto Racing, Inc.,* 410 F.Supp.2d 592, 600 (E.D.Ky. 2006) ("[T]he better view is to recognize [the conspiracy theory] in appropriate cases."); *General Motors Corp. v. Ignacio*

---

**2.** Because it is firmly established that Tennessee's long-arm statute extends to the limits of the Due Process clause, this Court need not concern itself with Tennessee law, but rather with whether the theory of jurisdiction comports with the U.S. Constitution. See *Chenault,* 36 S.W.3d at 52–53. In making such a determination, the Court is guided primarily by precedents and principles articulated by the United States Supreme Court and the Sixth Circuit Court, and regards state court decisions only as secondary, potentially persuasive authority. Consequently, Plaintiff's reliance on Tennessee case law in its argument before this Court is misplaced.

*Lopez de Arriortua,* 948 F.Supp. 656, 666 (E.D.Mich.1996) ("Thus, under the conspiracy theory of jurisdiction, the acts of the [defendants] may be attributed to their alleged coconspirators").

This Court finds the conceptual framework of applying basic principles of agency and conspiracy law to jurisdictional matters unobjectionable on its face. The well-established principle that personal jurisdiction must be based on the actions of the specific defendant at issue is not inherently at odds with the notions that a person can act through the acts of others and that parties can act in concert with one another. The applicability of the theory must, of course, be determined on a case-by-case basis. Accordingly, the arguable soundness of Plaintiff's theory does not necessarily translate into a winning legal argument as applied to the facts in this case.

 The case upon which Plaintiffs rely most heavily, *Chenault v. Walker,* offers a particularly thorough and lucid examination of the conspiracy theory, and its findings are helpful in assessing the strength of Plaintiffs' jurisdictional argument. The *Chenault* court found the conspiracy theory applicable under circumstances markedly different than those of the instant case. "Chenault's complaint and several affidavits set forth precise allegations and specific facts supporting a prima facie showing of jurisdiction, i.e., that the defendants engaged in a civil conspiracy to defraud him." *Chenault,* 36 S.W.3d at 56. In *Chenault* there was "no question that [the] complaint, which contain[ed] specific, detailed allegations, sufficiently charge[d] the defendants with a conspiracy." *Id.* at 52. In sharp contrast, Plaintiffs in the present case have responded to Defendant's detailed affidavits denying Plaintiffs' conclusory conspiracy allegations only with legal argument and speculation.[3]

Plaintiffs argue that they "are not required to prove the existence of a conspiracy at this stage in order to avail themselves of the conspiracy theory of jurisdiction." (Pls.' Mem. Law Opp'n Defs.' Mots. Dismiss Compl. 10, n. 6.) They quote from Tennessee appeals court decisions stating that "a plaintiff need only plead sufficient factual allegation from which the existence of a conspiracy may be inferred," and "the existence of a conspiracy is an issue of disputed fact which must be resolved by the trial court." *Id.* (quoting *Mfrs. Consolidation Serv., Inc. v. Rodell,* 42 S.W.3d 846, 861 (Tenn.Ct. App.2000) and *Anderson v. Roberson,* 2001 WL 1381359, *6 (Tenn.Ct.App. Nov. 6, 2001), respectively). However, Plaintiffs fail to acknowledge that they have fallen short of the very standards which they cite. Unsupported allegations in the complaint, in the face of Defendant's detailed affidavits challenging jurisdiction, are not "sufficient factual allegation[s]." The existence of a conspiracy only becomes a "disputed fact" when the plaintiff has submitted affidavits and other written evidence in response to defendant's written submissions. *Anderson, 2001 WL 1381359* at *6 ("Based upon the Plaintiffs' allegations *and affidavits,* we hold that the existence of a conspiracy is an issue of disputed fact which must be resolved by the trial court.") (emphasis added).

The *Chenault* court articulated the issue with considerable clarity:

---

**3.** Plaintiffs also offer as evidence in support of their conspiracy allegations screenshots from defendants' websites. None of these exhibits pertain to the moving Defendant, nor do they in any meaningful way corroborate *Plaintiffs'* allegations of a conspiracy to fix copper tubing prices in the U.S.

The cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough. Otherwise plaintiffs could drag defendants to remote forums for protracted proceedings even though there were grave reasons for questioning whether the defendant was actually suable in those forums.

*Chenault,* 36 S.W.3d at 55.

Plaintiffs assert that the EC decision provides ample factual support for their allegations of a global price-fixing conspiracy directly impacting the U.S. market. Specifically, the decision describes the international scope of the operations of some of the conspirators and mentions the existence of "a number of trade associations in the copper plumbing tube industry on a national and international level." (Pls.' Reply Moving Defs.' Mem. Resp. Pls.' Notice Filing Supplemental Authority 4–6). As evidence that Defendants illegally exchanged information as to areas outside Europe, Plaintiffs offer the existence of tables prepared by one of the defendants in 2001 "containing a detailed capacity of each competitor in the major markets of the world." *Id.* at 7. Finally, Plaintiffs argue at length that the EC decision, contrary to Defendant's assertions, does not reject the existence of a global conspiracy that extended to the United States. *Id.* at 2–4.

While Plaintiffs' assertion that the EC did not reject the existence of a global conspiracy appears to be accurate, it is also true that it did not offer any meaningful hint that such a conspiracy might exist.

Plaintiffs' citations to the EC decision only provide evidence that some of the European cartel members had interests abroad. They offer no corroboration of Plaintiffs' claims as to the existence of a conspiracy targeted at the U.S. or elsewhere outside of Europe. Consequently, the Court is unpersuaded by Plaintiffs' argument and finds their allegations to be without any substantial support.

Plaintiffs also cite this Court's July 6 ruling in support of its assertions as to the adequacy of its factual allegations. In that ruling, the Court stated that "[i]t is not inconceivable that knowledge of and participation in the conspiratorial acts existed among the U.S. and EU affiliated business entities and that such acts extended to the U.S. market." *American Copper & Brass, Inc. v. Boliden AB,* 2005 WL 1631034, at *4 (W.D.Tenn. July 6, 2005). This statement was made in the context of a 12(b)(6) failure to state a claim motion, in contrast to the present motion to dismiss for lack of jurisdiction over the person. In ruling upon a 12(b)(6) motion to dismiss, the court is concerned with the legal, not factual, sufficiency of plaintiff's complaint. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This "liberal pleading" standard [4] for the

4. This standard should not be construed to invite frivolous, baseless claims, however. Particularly relevant to this consideration is Fed. R. Civ. Proc. 11(b), which provides, in pertinent part, that "[b]y presenting to the court ... a pleading, ... an attorney ... is

certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, ... (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have

drafting of a complaint is markedly different from what is required of a plaintiff faced with a personal jurisdiction challenge supported by affidavits.

By standing on their pleadings alone, which are based entirely on an EC press release regarding a conspiracy on another continent, Plaintiffs have relied on "conclusory allegations and farfetched inferences," and thus have failed to make a prima facie showing of jurisdiction. Plaintiffs have offered no evidence demonstrating any legitimate factual dispute with Defendant. Consequently, the Court perceives no clear need for jurisdictional discovery or an evidentiary hearing, and chooses to exercise its discretion by granting Defendant's motion for dismissal upon the written submissions alone. Having found that this Court lacks jurisdiction over Defendant, it need not rule on the other grounds for dismissal offered by Defendant.

## IV. CONCLUSION

Plaintiffs have failed to substantiate in any meaningful way their bare allegations against moving Defendant. In the face of Defendant's detailed affidavits denying minimum contacts with the U.S. and denying involvement in any conspiracy to fix prices in the U.S., Plaintiffs have failed to satisfy their burden of making a prima facie showing of this Court's jurisdiction over Defendant. Accordingly, and for the reasons stated herein, Defendant Mueller Europe's motion to dismiss the complaint as to itself is hereby **GRANTED.**

evidentiary support after a reasonable opportunity for further investigation or discovery."